## 19898

Colgate W. DARDEN, III, Appellant, v. Elizabeth J. WITHAM, formerly Elizabeth J. Darden, and the Virginia National Bank of Norfolk, Virginia, Respondents.

(209 S. E. (2d) 42)

*Messrs. Lewis, Lewis, Robinson* and *Arnold,* of Columbia, *for Appellant,*

*Messrs. Burns, McDonald, Bradford, Erwin* and *Few,* of Greenwood, *for Respondent,*

October 11, 1974.

LEWIS, Justice:

The matter now before this Court is an outgrowth of our decision in *Darden v. Witham,* 258 S. C. 380, 188 S. E. (2d) 776. The action was originally brought by the appellant-Darden (herein called the husband), against the respondent-Witham (herein called the wife) as a declaratory judgment action to have the court declare the rights of the parties under a 1967 divorce decree, and a property settlement agreement adopted by the court as a part of the divorce decree. The property settlement agreement and the divorce decree provided that the husband make payments to the wife of $90,000 per year for ten years, to be followed by payments of $80,000 per year for an additional ten years, and also specifically provided that payments should continue during the stated periods regardless of the wife's remarriage.

In 1968, the wife remarried. In this action, the husband sought to have that portion of the agreement and decree concerning payments to the wife construed in the light of her remarriage and our divorce statutes, particularly Code Section 20-114. That statute provides ". . . in the event of the remarriage of the wife the amount fixed in such decree for her support shall forthwith cease and no further such payments shall be required from such divorced husband." The lower court held that the husband's obligation to make payments continued notwithstanding the remarriage of the wife. We affirmed. Reference is made to *Darden v. Witham, supra,* for a more full understanding of the issues before us.

In our former opinion, we remanded the case to the lower court for the purpose of disposing of the wife's request to the court for fees to pay her attorneys. In discussing the husband's challenge that the lower court improperly granted leave to the wife to apply to that court for fees, we said:

"Darden excepts to that portion of Judge Ness' order which granted Witham leave to apply to the court for attorneys' fees."

.  .  .  .  .  .

". . . The fact that the same issues were presented by way of a declaratory judgment proceeding should not alter the obligation of Darden to pay attorneys' fees if, under Code Section 20-112, the court deemed this appropriate. Under these circumstances we feel that an award of an attorneys' fee is quite proper and the case is remanded to the lower court for disposition of that matter."

Thereafter, the wife's attorneys requested the lower court to set reasonable attorneys' fees for their services. After an evidentiary hearing, the court ordered payment of $175,000 directly to the wife's attorneys. It is from this order that the husband appeals.

In this appeal, the husband raises four questions: (1) He charges error in the lower court's allowing any attorneys' fees under South Carolina Code Section 20-112 (1962) in the absence of a showing of need by the wife; (2) he challenges the constitutionality of Code Section 20-112; (3) he attacks the award given by the lower court as being excessive; and (4) he argues that it was improper for the lower court to make the award directly to the wife's attorneys instead of to her.

In considering the challenge of the award of suit money under Code Section 20-112, it becomes necessary to construe this court's decision in our prior Darden opinion.

At the evidentiary hearing, the judge construed our previous Darden opinion as holding that attorneys' fees should be paid. He refused to allow evidence on the question of the right to attorneys' fees and limited the hearing to the amount only. The husband contended at the hearing, and now contends before this Court, that our opinion only held that the application for attorneys' fees could be made. He argues that there has been no finding that the allowance of

"suit money" was "well founded" as required by Code Section 20-112, which reads as follows:

"Section 20-112. Alimony; suit money.—In every action for divorce from the bonds of matrimony, the wife, whether she be plaintiff or defendant, may in her complaint or answer or by petition pray for the allowance to her of alimony and suit money and for the allowance of such alimony and suit money *pendente lite*. If such claim shall appear well founded the court shall allow a reasonable sum therefor."

Normally, the burden of proving that a claim for suit money is "well founded" is upon the wife, and normally, the husband is entitled to have the factual issue determined in the lower court, but under the facts of this case, the question of whether the wife's claim that her right to suit money is "well founded" can no longer be in serious debate. At the evidentiary hearing on the attorneys' fees question, the husband admitted that he brought the action for the purpose of assuring to himself a tax advantage. He stated in response to his own counsel's question:

"Q. Now, when this case—when this appeal was begun, can you tell us why you decided to take this matter up under appeal?

"A. Well, it seems under the circumstances that I had no other alternative. Mr. Salley testified earlier today, the tax service that I subscribed to uncovered the situation with the Internal Revenue Service of the U. S., was challenging the deductibility of payments made in agremeents such as the one I had signed, so that I would be confronted with on the one hand to be required by the Court to pay Ninety Thousand Dollars a year, and the Revenue Service on the other hand saying well the Court never had the authority to make you pay those, therefore, we disallow the deduction and charge you with a gift tax, and, of course, I don't have that much income."

In his brief, he states:

"This action was commenced by the Appellant upon the advise of his tax counsel who informed him that as a result

of Allan Hoffman, 54 T.C. 1607, that the deduction of the alimony payments might be in jeopardy."

Although the husband states that he sought no affirmative relief against the wife, it is inescapable that he asked the court to hold that the payments could be discontinued. If the court agreed with his contention, the payments would be discontinued; and if the court disagreed with his contention, he preserved a tax advantage he sought to keep. In his brief, the husband concedes:

". . . He is now trying to avoid that Order; he is trying to insure that the award of attorneys fees, if any, is reasonable and warranted under the circumstances."

In the light of the fact that the wife was thrown into litigation, jeopardizing her payments for the primary purpose of settling the husband's possible tax problems, we have no hesitancy in holding that the allowance of "suit money" is "well founded," and this is true whether she be financially able to pay her own attorney or not. The solemn agreement and the decree were designed to settle any monetary disputes between these parties. Certainly, it was never contemplated that the wife would have to litigate the agreement in order to preserve her rights.

The husband also attacks the constitutionality of Code Section 20-112, and argues that it violates the Fourteenth Amendment of the Constitution of the United States in that it provides for the payment of "suit money" only to one class of litigants (wives), a classification by sex that is not rationally related to any constitutionally permissible governmental purpose.

The issue concerning the constitutionality of Section 20-112 was not presented in the lower court but was raised for the first time on appeal. The rule is well settled that a constitutional question not raised or passed upon in the lower court will be considered waived. The record reveals no reason to disregard this long established rule.

The next question presents the main issue in the appeal and involves the husband's contention that the award for attorneys' fees was excessive under the facts and circumstances of this case.

The testimony varied as to what a reasonable fee would be. Appellant's witnesses were of the opinion that a $75,-000.00 fee would be reasonable; while respondent's witnesses varied in their opinions from $250,000.00 to $350,-000.00. The trial judge, in the exercise of his discretion, set the fee at $175,000.00.

In determining the amount of the fee, the trial judge found "that the legal questions here involved were novel, complex and difficult" requiring an exhaustive review and research of the decisions from many other states. Respondent's attorneys spent in excess of 750 hours in handling this matter. The amount involved in the controversy was in excess of $1,500,000.00, payable over a period of twenty years. If respondent won, she would receive that amount. If she lost, she would receive nothing. The attorneys involved in this litigation were, admittedly, successful lawyers, with excellent reputations and a high degree of professional skill.

With reference to the expert testimony presented by the parties, the trial judge stated:

". . ., five eminently successful and outstanding attorneys testified as experts in this case and gave their professional opinion of a reasonable fee which should be paid to the Respondent's attorneys. Thomas H. Pope, Esquire, of the Newberry County Bar, G. Ross Anderson, Esquire, of the Anderson County Bar, and Terrell L. Glenn, Esquire, of the Richland County Bar, testified for the Respondent; and Augustus T. Graydon, Esquire, and John W. Thomas, Esquire, both of the Richland County Bar, testified for the Petitioner. All of these attorneys are experienced in the handling of novel legal questions involving large sums and each of them had, prior to their testimony, reviewed the Transcript of Record and Briefs of counsel in the earlier case, the Affidavits of counsel attached to the Motion in the

instant matter, and, to some extent, the Depositions filed of record in the case. Furthermore, each of these experienced attorneys stated that they had reviewed at length with counsel for the party on whose behalf they testified such counsel's file, and each of these witnesses stated that they had reviewed Canon 12 of the factors listed therein for establishing a reasonable fee. Mr. Pope testified that in his opinion a reasonable fee in this case would be between Two Hundred Fifty Thousand Dollars ($250,000.00) and Three Hundred Thousand Dollars ($300,000.00); Mr. Anderson testified that in his opinion a reasonable fee would be between Two Hundred Seventy-five Thousand Dollars ($275,000.00) and Three Hundred Thousand Dollars ($300,000.00); and Mr. Glenn testified that in his opinion a reasonable fee would be between Three Hundred Thousand Dollars ($300,000.00) and Three Hundred Fifty Thousand Dollars ($350,000.00). Both Mr. Graydon and Mr. Thomas, witnesses for Petitioner, testified that in their opinion a reasonable fee under the facts here would be Seventy-five Thousand Dollars ($75,000.00). It should be noted, based upon this expert testimony, that the maximum fee allowable by this Court would be the sum of Three Hundred Fifty Thousand Dollars ($350,000.00), while the minimum allowable fee would not be less than Seventy-five Thousand Dollars ($75,000.00)."

It is well settled that the amount of attorney's fees to be awarded to the wife's attorneys in this matter rested within the sound judicial discretion of the lower court and will not be disturbed on appeal unless an abuse thereof is shown.

In determining the amount of the fee, the court properly took into consideration "the nature, extent and difficulty of the services rendered; the time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation, and the beneficial results accomplished." *Smith v. Smith,* 253 S. C. 350, 170 S. E. (2d) 650.

The trial judge properly concluded that no one of the above factors in itself was controlling but that consideration should be given to all in arriving at a reasonable fee. He accordingly rejected as unfair any attempt to set the fees on a contingent basis alone or solely on an hourly rate.

Certainly, in the exercise of its discretion, the lower court was not required to completely disregard, as of no probative value, the testimony of the witnesses who testified for respondent and to adopt the testimony of appellant's witnesses. Under this record, the exercise of discretion by the lower court cannot properly be so arbitrarily confined.

The award of the lower court was well within the range of the maximum and minimum evidence submitted by the expert witnesses; and was based upon findings, amply supported in the record, that the attorneys for the wife enjoy and deserve excellent professional reputations, the services performed were difficult, and the result obtained for the wife was the protection of an amount in excess of $1,500,000.00 if she lives twenty years. We find no abuse of discretion under this record.

The mere fact that this Court might set a smaller fee does not establish an abuse of discretion. As stated in 5A C. J. S. Appeal and Error § 1583b, p. 35:

"A reviewing court is never justified in substituting its discretion for that of the trial court; in determining whether the lower court has abused its discretion, the question is not whether the reviewing court agrees with the court below, but, rather, whether it believes that a judicial mind, in view of the relevant rules of law applicable to the particular case and on due consideration of all the circumstances, could reasonably have reached the conclusion of the court below, of which complaint is made."

Whether or not there was an abuse of discretion must be determined in the light of the facts and circumstances of the particular case. The term discre-

tion involves the idea of a choice, and its exercise in this case turned largely upon factual considerations. Upon the basis of the conflicting evidence, the trial judge determined that a fee of $175,000.00 was reasonable. It is supported by the facts and, admittedly, by the opinions of experienced and capable attorneys. Before this Court is authorized to hold that the judgment of the lower court resulted from an abuse of discretion, there must be a showing by appellant that the conclusions reached were without reasonable factual support, resulted in prejudice to the right of the appellant, and therefore, in the circumstances, amounted to an error of law. *S. C. State Highway Dept. v. Sharpe,* 242 S. C. 397, 131 S. E. (2d) 257. There is no such showing in this case.

In his final exception, the husband contends that the lower court erred in directing that the attorneys' fees be paid directly to the attorneys. Code Section 20-112 provides that the court may allow the wife suit money. Counsel for the husband argues that an order granting payment directly to the attorneys is void. The wife's attorneys acknowledge ". . . that the preferred practice is to order attorneys' fees paid to the party, . . .." Traditionally in this State, in divorce actions fees have been ordered paid directly to counsel. Normally, there is no reason to contest such payment and this Court is not aware of any evils growing out of the practice.

In the original order, the trial judge provided for "a reasonable attorneys' fee to be paid to her attorneys for defending the action." This apparently caused no concern on the first appeal, nor at the hearing on remand.

The principle is well settled that error is not reversible unless prejudice to the complaining party may have resulted therefrom.

Assuming error in directing that the fees be paid directly to the attorneys, no prejudice to the husband has been shown. The wife testified in the court below in behalf of the motion of her attorneys, whereby they sought payment and ". . . an order setting a reasonable at-

torneys' fee for the undersigned attorneys. . . ." Neither the husband nor the wife is in a position to complain, and a reversal on this ground is not required.

The judgment of the lower court is accordingly affirmed.

Moss, C. J., and Bussey, J., concur.

Brailsford and Littlejohn, JJ., concur and dissent.

Littlejohn, Justice (concurring and dissenting) :

I concur in the opinion of Mr. Justice Lewis except on one point. The husband submits that the lower court abused its discretion in directing him to pay counsel fees in the amount of $175,000.00 to the attorneys for the wife. In my view the fee is excessive such as to require the intervention of this Court and a reversal on this one issue.

The attorneys estimated the amount of time spent in the handling of this case. Based on these estimates the lower court found that they had spent in excess of 750 hours collectively. Accepting 750 hours as being correct, the fee amounts to $233.33 per hour per lawyer. If the number of hours spent on this case is more, the amount per hour would, of course, be correspondingly reduced.

The wife had much involved. She was justified in employing able counsel, which she did; counsel were justified in diligently pursuing the case, which they did. The writer of this dissent was the author of the opinion affirming the lower court in the case for the handling of which the husband must now pay attorneys' fees. The management of the case created difficulties and was troublesome only in the sense that the wife could have lost much. At the same time, the issues were not greatly complicated and the wife was clearly entitled to win, as held by the lower court and promptly affirmed by the unanimous vote of the members of this Court.

The attorneys are entitled to be paid by the husband, but the services rendered simply do not justify payment of $175,000.00.

I would reverse the lower court on this issue and either remand the case for reassessment of the fee or have this Court set the amount.

BRAILSFORD, J., concurs.

BRAILSFORD, Justice (dissenting):

I concur in the opinion of the majority except as to the amount awarded as attorney fees. As to that, I concur in Justice Littlejohn's dissent for the reasons stated by him and for the following additional reasons.

The testimony of Mrs. Witham's expert witnesses, the order appealed from and the brief all emphasize the concept that the exertions of esteemed and able counsel in the course of this litigation saved for Mrs. Witham in excess of $1,-500,000.00, albeit payable in installments. While other factors were considered, the record brings conviction that this conception of the amount involved in the controversy and of the benefits resulting to Mrs. Witham dominated the evaluation by the expert witnesses and the court of the legal services furnished her. While benefit conferred by legal services is an important factor for consideration in fixing a fee to be paid by the benefited client, in all fairness, much less weight should be given to it when the fee is to be assessed against the client's adversary. But even if full weight be given to benefit conferred upon Mrs. Witham, as though the fee assessed would be paid by her, the conception of the amount of benefit as $1,500,000.00 is unsound.

In the first place, Mrs. Witham did not gain the right to these installment payments in this litigation, which merely preserved what was already her due. Nor does she get the money now. Instead, it is to be paid to her in installments over a period of some nineteen years, but only for so long as she lives. While there was no testimony as to the present value of the installments, common sense tells us that even without regard to the contingency of their accrual, such value is very substantially less than their sum.

There is another even more cogent reason why Mrs. Witham's expectancy was not worth nearly so much as the sum of the installments. We can be sure that the settlement was carefully drafted so that the annual installments would be deductible by Mr. Darden for tax purposes and reportable by Mrs. Witham as income. The genesis of this ancillary litigation was information received by Mr. Darden which suggested that installments paid after Mrs. Witham's remarriage might not be so deductible—an apprehension that was laid at rest by our earlier decision. The record furnishes no basis for a calculation of the tax impact on the annual installments. It is, however, common knowledge that the tax rate on income in this range would exceed 50%. Inevitably, the present value of Mrs. Witham's disposable income under the agreement would bear small resemblance to the sum of the installments, which was apparently regarded as the resulting benefit by Mrs. Witham's expert witnesses.

It is, of course, true that the amount of the fee was addressed to the discretion of the esteemed circuit judge (who will soon succeed the writer as a justice of this Court) and that the amount allowed was well within the range of the expert opinions. However, the expert testimony does not relieve us of our duty to examine the reasonableness of the fee in the light of the entire record and of our own comprehension of such matters. Having done so, I find nothing to justify a fee of more than that, in effect, assented to by Mr. Darden through his expert witnesses. I am convinced that the amount awarded resulted from an unrealistic estimate of the benefit conferred on Mrs. Witham and on over-emphasis of the importance of this factor in a case of this kind, both by the distinguished lawyers who testified as experts and by the court. I would modify the judgment appealed from by reducing the amount awarded to $75,000.00.