0072

Elizabeth S. REID, Respondent, v. Charles D. REID, Appellant.

(312 S. E. (2d) 724)

Court of Appeals

*Kenneth C. Porter,* of *Porter & Rosenfeld,* Greenville, *for appellant.*

*John A. Hagins, Jr.,* of *Horton, Drawdy, Hagins, Ward & Johnson,* Greenville, *for respondent.*

February 13, 1984.

GOOLSBY, Judge:

A divorce was granted to the appellant Charles D. Reid and the respondent Elizabeth S. Reid by the family court upon the statutory ground of one year's separation. The issues on appeal are: (1) whether the trial judge erred in requiring the husband to pay the costs of tuition and reasonable college expenses of the parties' nineteen-year-old daughter; (2) whether the trial judge erred in awarding the parties' children the use of automobiles owned by the husband's employer; (3) whether the trial judge erred in his findings regarding the values of certain marital properties; (4) whether the trial judge erred in awarding the wife a one-half undivided interest in certain property purchased with funds derived from an inheritance; (5) whether the trial judge erred in considering the assets of the husband's business in his division of the marital property; and (6) whether the trial judge erred in awarding attorney's fees to the wife. We affirm in part, reverse in part, and remand certain issues.

### 1. *College Expenses*

The husband contends that the trial judge erred in compelling him to pay for a nineteen-year-old daughter's college education because sufficient evidence was not introduced to support the daughter's need for financial assistance and a college education and to show her fitness to attend college.

The Supreme Court in *Risinger v. Risinger*, 273 S. C. 36, 253 S. E. (2d) 652 (1979), set forth some of the criteria which a family court may consider in determining whether a divorced parent should be ordered to assist a child over eighteen (18) years of age with his or her educational expenses. The court said:

> We do not presume to list all circumstances under which a divorced parent may be ordered to help pay for the educational expenses of a child over 18 years of age. That determination must be left largely in the hands of our family court judges. Without holding that these are the only circumstances under which a family court's award is proper, we hold that a family court judge may require a parent to contribute that amount of money necessary to enable a child over 18 to attend high school and four years of college, where, as here, there is evidence that: (1) the characteristics of the child indicate that he or she will benefit from college; (2) the child demonstrates the ability to do well, or at least make satisfactory grades; (3) the child cannot otherwise go to school; and (4) the parent has the financial ability to help pay for such an education.

273 S. C. at 39, 253 S. E. (2d) 652; *see also* 59 Am. Jur. (2d) *Parent and Child* § 58 at 149 (1971).

The trial judge simply found that the daughter was a "student at Anderson College," was "doing quite well," the husband "has been generous in providing for his children" and the husband had established a savings account "for the purpose of paying [her] tuition." No findings of fact were made, however, that the daughter would benefit from a college education and that she could not otherwise attend college. Without these findings in this instance the trial judge improperly directed the husband to pay an emancipated child's educational expenses [*cf. Kerr v. Kerr*, 278 S. C. 191, 293 S. E. (2d) 704 (1982)]; therefore, the requirement that the

husband pay the costs of tuition and reasonable college expenses of his daughter is reversed and the issue remanded for findings of fact as to whether the daughter would benefit from a college education and as to whether she could attend college without her father's support. We recognize, however, that due to the passage of time this question may well be moot.

### 2. *Automobiles*

The husband next complains about the trial judge's order requiring him to permit his "children [to] receive [the] use and possession of the automobiles which they drive." The children were both emancipated and there was evidence the automobiles in question were owned by the husband's employer, Reid Office Supply and Printing Company, Inc. Moreover, nowhere in her petition did the wife ask the court for that relief.

Ordinarily, relief which is not requested in the pleadings may not be received by a party. *Gainey v. Gainey,* 279 S. C. 68, 301 S. E. (2d) 763 (1983). Clearly, the award of the use and possession of the automobiles was erroneous on that ground alone and is, accordingly, reversed. It is not necessary for us, then, to discuss the other questions concerning the automobile award.

### 3. *Marital Property Evaluations*

The husband also charges that the values placed by the trial judge upon the various properties comprising the marital estate were not supported by the evidence. The evaluations accorded the several properties were central to the family court's division of the marital estate. In any equitable distribution of marital assets, the family court not only must identify the property which constitutes the marital estate but must also determine the fair market value of the particular property. *See* Chastain, Henry, & Woodside, *Determination of Property Rights Upon Divorce in South Carolina: An Exploration and Recommendation,* 33 S. C. L. Rev. 227, 244-46 (1981). We review, therefore, each disputed property evaluation to determine whether the evidence supports it.

The challenged evaluations relate to the following properties: (1) the Reid Office Supply and Printing Co., Inc.; (2) the Holly Tree Plantation property; (3) The Gibson houseboat; (4) the East Circle Avenue property; (5) the

Shannon Drive property; and (6) the household furnishings. Before determining, however, whether the trial judge's evaluations of the marital assets have evidentiary support, we call attention to the generally accepted definition of the term "fair market value." A property's "fair market value" is the amount of money which a purchaser willing but not obligated to buy the property would pay an owner willing but not obligated to sell it, taking into account all uses to which the property is adapted and might in reason be applied. *Donaldson v. Greenwood*, 40 Wash. (2d) 238, 242 P. (2d) 1038, 1046 (1952); 31A C. J. S. *Evidence* § 181 at 459 (1964); *S. C. State Hwy. Dept. v. Bolt*, 242 S. C. 411, 416, 131 S. E. (2d) 264 (1963).

### a. Reid Office Supply

The trial judge valued Reid Office Supply at Two Hundred Thousand Dollars ($200,000). An appraisal report prepared by an expert called by the wife and introduced in evidence reflected that the "fair market price for all of the capital stock of the subject company" was One Hundred Sixty Thousand Dollars ($160,000); however, the appraisal valued the fixed assets at their book or depreciated value and not at their fair market value. The wife testified without objection that the business was worth Two Hundred Fifty Thousand Dollars ($250,000) but later added that she did not know its actual value. No figure was offered by the husband. Obviously, the trial judge's evaluation of the business lacks evidence to support it and a remand of the issue concerning Reid Ofice Supply's fair market value is necesary.

When valuing business interests for the purpose of equitable distribution, the family court should determine " 'the fair market value of the corporate property as an established and going business.' "*Santee Oil Co. v. Cox*, 265 S. C. 270, 273, 217 S. E. (2d) 789 (1975). "This is to be accomplished by considering the business' net asset value, the fair market value for its stock, and earnings or investment value." Chastain, Henry, & Woodside, *supra* at 246; *see also Metromont Materials Corp. V. Pennell*, 270 S. C. 9, 239 S. E. (2d) 753 (1977).

### b. Holly Tree Plantation Property

The husband owns a one-third undivided interest in twenty (20) acres of land in Simpsonville, South Carolina, referred to as the Holly Tree Plantation property.

The trial judge gave it a value of Two Thousand Seven Hundred Dollars ($2,700) per acre. According to the husband, its purchase price was One Thousand Dollars ($1,000) per acre. Sometime after the property was bought, he testified it was advertised for sale at Two Thousand Dollars ($2,000) per acre. More recently, it was offered for sale at Three Thousand Dollars ($3,000) per acre. An offer of Fifteen Hundred Dollars ($1,500) per acre was rejected. The wife offered no evidence as to its value. Ordinarily, a bona fide offer to sell land at a certain price does not establish the land's value. *Cf. Baynham v. State Hwy. Dept.*, 181 S. C. 435, 450, 187 S. E. 528 (1936). But where the offer to sell at a certain price is the nature of an admission, it may constitute evidence of value as against the owner. 31A C. J. S. *Evidence* § 182(3) at 472 (1964); *cf. Humble Oil & Refining Co. v. DeLoache*, 297 F. Supp. 647 (D. S. C. 1969). Here, then, there is sufficient evidence to support the trial judge's evaluation of the Holly Tree Plantation property at Two Thousand Seven Hundred Dollars ($2,700) per acre in that there was evidence of a bona fide offer by the husband and his associates to sell the property at Three Thousand Dollars ($3,000) per acre. The trial judge's evaluation of the Holly Tree Plantation property is affirmed.

### c. Gibson Houseboat

The trial judge valued the husband's Gibson houseboat, purchased in 1973, at Fourteen Thousand Dollars ($14,000). After testifying that he would not sell his boat for less than Fifteen Thousand Dollars ($15,000), the husband stated that he "probably" could get only "eleven or twelve thousand" dollars for it. The wife remembered that the husband originally paid "about eleven thousand for" the boat; however, she did not testify as to what its fair market value was at the time of the hearing. While a bona fide offer to sell personal property at a named price could properly be considered as evidence of the property's value as against its owner [31A C. J. S. *Evidence* § 183(3) at 485-86 (1964)], there is no evidence of such an offer in this instance for the Gibson houseboat. The husband's testimony at trial that he would not sell his boat for less than Fifteen Thousand Dollars ($15,000) hardly qualifies as a bona fide offer to sell it. Because the value placed by the trial judge on the houseboat is not sup-

ported by competent evidence, the issue concerning its value is remanded.

### d. East Circle Avenue Property

The trial judge placed the value of the East Circle Avenue property at Forty Thousand Dollars ($40,000). Both parties apparently agree now, judging from their briefs, that the trial judge's evaluation is correct; therefore, his order to that extent is affirmed.

### e. Shannon Drive Property

The trial judge accorded the Shannon Drive property a net value of Thirty-eight Thousand Five Hundred Dollars ($38,500); however, the parties apparently stipulated that the property had a value of Fifty-five Thousand Dollars ($55,000) and testimony revealed that Fourteen Thousand Dollars ($14,000) was still owed on it. Because the trial judge's evaluation of the Shannon Drive property has no evidence to support it, in view of the apparent stipulation, the issue as to its fair market value is remanded as well.

### f. Household Furnishings

The trial judge neglected to put a value on the household furnishings; therefore, the issue as to those items is also remanded.

In dividing the personal property, the trial judge should. (1) identify the personal property of the marriage, (2) determine the property's fair market value, and (3) decide on the mechanics by which the property will be distributed. *See Hussey v. Hussey*, 312 S. E. (2d) 267, Opinion No. 0052 (S. C. Ct. App., filed January 23, 1984).

### 4. *Inherited Property*

The husband further argues that the trial judge erroneously divided property jointly owned by the parties. He claims that the sum of Eight Thousand Seven Hundred Dollars ($8,700) which he derived from an inheritance was applied toward the purchase price of Sixteen Thousand Five Hundred Dollars ($16,500) for a lot in Pebble Creek Subdivision. Both parties valued the property at Twenty-five Thousand Dollars ($25,000), a figure accepted by the trial judge. The property was equally divided by the trial judge between the parties. The husband maintains that his share should

have been seventy-five per cent (75%) and not fifty per cent (50%) since half the purchase price came from inherited funds. The wife disputes the husband's claim.

Because the trial judge made no findings of fact regarding the issue, we remand it to the family court for a proper determination regarding whether inherited funds were used in the acquisition of the Pebble Creek property and, if so, whether they retained their non-marital character. *See Hussey v. Hussey, supra; Cooksey v. Cooksey,* 312 S. E. (2d) 581 (S. C. App. 1984).

### 5. *Business Assets*

Perhaps the husband's principal complaint relates to the trial judge's consideration of Reid Office Supply's assets in his division of the marital estate. Reid Office Supply was founded by the husband early in the marriage. All but one share of the company's stock is owned by the husband. The wife owns the one share. In dividing the marital property, the trial judge preserved the husband's essentially complete ownership of the company and denied the wife a greater interest in it (*cf. Poniatowski v. Poniatowski,* 275 S. C. 11, 266 S. E. (2d) 787 (1980)]; however, the trial judge took into account when dividing the marital property that the husband would be left with this valuable asset. The husband, though, asserts that the wife is not entitled to have the business assets considered.

Although a spouse need not prove that he or she made a material contribution toward the acquisition of particular property in order to be entitled to an equitable interest in it [*see Wilson v. Wilson,* 270 S. C. 216, 241 S. E. (2d) 566 (1978)], the evidence here clearly established that the wife materially contributed through "personal services to the husband's business." *Baker v. Baker,* 276 S. C. 427, 430, 279 S. E. (2d) 601 (1981). She did so in a variety of ways. Among other things, she provided secretarial and bookkeeping services to the company; she entertained customers; she attended business meetings and conventions; she took part in civic activities; and she assisted with the installation of a computer system to aid the company. Yet, at no time was she ever paid a salary. The wife's contributions to Reid Office Supply no doubt aided its growth, helped its success, and enhanced its

value. We affirm the trial judge, therefore, to the extent that he considered the business assets in apportioning the marital property. *Poniatowski v. Poniatowski, supra.*

Because most of the issues concerning the division of the marital property are being remanded for redetermination, it is not necessary for us to consider the husband's exception relating to the mathematical computations made by the trial judge as he divided the property. New conclusions regarding property evaluations will necessarily effect a different division of the marital property.

### 6. *Attorney's Fees*

Finally, the husband contends that the award of attorney's fees was erroneous because the wife possessed sufficient assets to pay the fees herself and because the court ordered the fees to be paid directly to the wife's attorney.

An award of attorney's fees rests within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *Cudd v. Arline,* 277 S. C. 236, 285 S. E. (2d) 881 (1981); *Darden v. Witham,* 263 S. C. 183, 209 S. E. (2d) 42 (1974). We find that the record supports the award of an attorney's fee in the amount of Two Thousand Dollars ($2,000). As to the husband's specific complaint, the fact that the wife has sufficient assets to pay attorney's fees is not the basis upon which their award is to be determined. "[T]he allowance of 'suit money' is 'well founded,' and this is true whether she be financially able to pay her own attorney or not." *Id.* 263 S. C. at 191, 209 S. E. (2d) 42.

The husband's argument that it was error for the court to order the payment of fees directly to the wife's attorney is well-founded. The case of *Louthian and Merritt, P.A. v. Davis,* 272 S. C. 330, 251 S. E. (2d) 757 (1979), disapproves of this method of awarding attorney's fees. In *Louthian and Merritt, P.A., supra,* our Supreme Court stated that because a claim for attorney's fees incidental to a divorce action is purely personal, they are to be awarded to the litigant and not to the attorney. The trial court erred, then, in awarding attorney's fees directly to the wife's attorney; however, the error in their award is not reversible because no prejudice to the husband has been shown. *Darden v. Witham, supra; cf.* S. C. Code Ann. § 20-3-145 (Cum. Supp. 1983); 32

S. C. L. Rev. 111 (1980). The award of attorney's fees, there-fore, is affirmed.

For the reasons given, the order and judgment appealed from is

Affirmed in part, reversed in part, and remanded.

SHAW and CURETON, JJ., concur.