**Sylvia MEYERES, Appellant,**

v.

**George F. (Bud) MEYERES, Appellee.**

**No. S–347.**

Supreme Court of Alaska.

Sept. 6, 1985.

Fleur Roberts, Law Offices of Dick L. Madson, Fairbanks, for appellant.

Ronald E. Noel, Gail M. Ballou, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This is an appeal from an order denying Sylvia Meyeres' request to modify the marital property distribution that accompanied her decree of divorce from George "Bud" Meyeres.[1] In the divorce decree the superior court awarded each party a 50% interest in certain assets, including two parcels of real property and stock in three closely held corporations. However, the court also provided that Bud could buy Sylvia's interest in the realty at one-half of the parcels' appraised value and her interest in the three corporations at one-half of their book value. Additionally, the court allowed Bud to arrange for the properties' appraisal.

Sylvia did not appeal the superior court's divorce decree. Instead, she waited until Bud exercised his court-ordered options. Sylvia then filed a "Motion to Enforce Decree," in which she contended that the five disputed assets were greatly undervalued and that the court should have granted her counter-options to purchase Bud's interests if his proposed buy-out offer proved to be unacceptably low. Accordingly, she asked the court to deny Bud's motion to enforce distribution. The superior court declined to do so. Sylvia appealed.

I. FACTS AND PROCEEDINGS

In May 1981 George "Bud" Meyeres sued for divorce from his wife, Sylvia Meyeres. The parties received a divorce decree in December 1982. The superior court's findings of fact and conclusions of law identified certain properties as marital assets subject to equitable division, including real estate and corporate stock. During

---

**1.** Sylvia's motion was labelled a "Motion to Enforce Decree" but it was also in the nature of a Rule 60(b) motion since it assailed certain terms of the divorce decree relating to the valuation of assets and the granting of buy-out options to Bud only.

the divorce proceeding, neither Bud nor Sylvia introduced expert testimony about the value of their interests in certain closely held corporations or the value of their real estate. The court apparently relied on Bud's testimony to determine the estimated value of the parties' marital assets.

On January 7, 1983, Sylvia's trial attorney filed a Rule 59(f) motion to amend the divorce decree's findings and conclusions. Specifically, Sylvia's counsel objected to the following: (1) that Sylvia would have to wait up to 90 days to receive the $50,000 awarded to her in lieu of alimony, (2) that "no mention was made of costs or attorney's fees," (3) that the court had failed to award her "one-half of the mortgages receivable and partnership interests," and (4) that the court had failed to give Sylvia the same buy-out options granted to Bud, even though granting options to both parties would avoid "the problem of an appraisal price which is below market price."

On February 8 the superior court heard oral argument on the motion to amend. During that hearing the superior court judge orally denied the motion to amend. Sylvia's trial counsel did not appeal this ruling.

In March 1983 Bud sent Sylvia a letter, along with a check for $89,977.49, to exercise his buy-out options granted in the divorce decree.[2] However, the amount tendered by Bud in exercising his buy-out options was based on valuations of various properties that yielded amounts much lower than those discussed at trial or in the superior court's findings and conclusions in the divorce decree.

On May 5, 1983, Bud filed a motion to enforce the divorce decree. Sylvia filed a "motion to enforce divorce decree" on May 20, which the superior court treated as an opposition and cross-motion. Her motion asked the superior court to redress the apparent inequity inherent in Bud's proposed buy-out by giving Sylvia "the right to buy out Mr. Meyeres' one-half interest in the property for the same sum he proposes to purchase Mrs. Meyeres' one-half share." Sylvia stressed that the court had ordered the real property and corporate stock acquired during the marriage to be divided equally. Based on Bud's own testimony, the court had decided that the marital property was worth $540,000. However, "Mr. Meyeres now offers, in the March 28 letter, to pay the defendant less than $41,000 total for her one-half interest in what the court was led to believe [during trial] was over a half a million dollars in property."

On June 16, 1983, the superior court held a hearing on the parties' respective motions. During that hearing Sylvia's counsel[3] emphasized the obvious discrepancy between the valuation amounts used by Bud in his buy-out proposal and those listed in Paragraphs 7 and 8 of the superior court's divorce decree. In particular, Sylvia assailed Bud's use of book value in setting the amounts at which he would buy out her interest in the close corporations. She also objected to Bud's use of an appraiser with whom he had a longstanding social and business relationship, and she disputed the new valuations placed on certain parcels of real estate, valuations much lower than those estimated by the court in its findings and conclusions.

On July 22, 1983, the superior court ruled in favor of Bud's "motion to enforce" the terms of his proposed buy-out of Sylvia's interest in the real estate and close corporations at issue. Sylvia then appealed.

## II. DISCUSSION

This case is not an appeal from the superior court's divorce decree itself. Notwithstanding problems inherent in that decree's findings and conclusions, Sylvia did not appeal the terms of the court's property distribution. We decline to review what Syl-

---

**2.** Approximately two-thirds of that check covered undisputed amounts owed to Sylvia, such as the $50,000 awarded to her in lieu of alimony in accordance with the parties' antenuptial agreement, $8,500 for liquidated assets, and also at-

torney's fees previously ordered by the superior court.

**3.** At this stage of the proceedings Sylvia was represented by different counsel.

via's trial counsel failed to appeal. Therefore only one issue is properly before us now: whether the superior court abused its discretion by enforcing Bud's exercise of his buy-out options after the court determined that the amounts Bud tendered to Sylvia fulfilled the requirements of the divorce decree's property distribution order.

During the June 1983 hearing on the parties' respective motions to enforce the divorce decree's property distribution, the central issue before the superior court was whether Bud had fulfilled the requirements set forth in that decree's findings and conclusions. In Sylvia's motion to enforce, her key objections pertained to (1) the apparent inequity resulting from Bud's use of simple "book value" in buying out her interests in their closely held corporations, and (2) Bud's use of an appraiser not acceptable to Sylvia to ascertain the amounts at which he would buy out her one-half interest in their real estate. However, Sylvia's arguments in her motion to enforce are objections to the terms of the divorce decree itself, which her trial attorney failed to appeal in accordance with Appellate Rule 204. Thus the only issue properly before us is whether the superior court abused its discretion in deciding that Bud had satisfied the divorce decree's property distribution requirements.

Paragraph 3 of the divorce decree granted each of the parties a 50% interest in the "Chena Lakes" property and "Lipscomb Subdivision" lot, and granted Bud the option to buy Sylvia's interest; if he declined to do so within 90 days, then the properties would be sold and the proceeds distributed equally. In paragraphs 1 and 9 of its subsequent enforcement order, the court found that Bud's creation of a joint tenancy in these properties fulfilled the divorce decree's requirement.

Paragraph 7 of the divorce decree granted Bud an option to buy out Sylvia's one-half interest in both the "Nome mining claim" property and the Sisters of Providence acreage and allowed Bud to determine the purchase price by a subsequent appraisal. Paragraphs 10 and 11 of the subsequent enforcement order accepted Bud's payments of $6,200 and $16,000 for Sylvia's interests in the respective properties, thereby fulfilling the requirements of the divorce decree.

Finally, paragraph 8 of the divorce decree granted Bud an option to buy out Sylvia's interest in their closely held corporations, and provided that such a buy-out "shall be in an amount equal to the book value of the shares." In its subsequent enforcement decision the superior court declined to revise its earlier decision to allow book value to be the basis for Bud's buy-outs of Sylvia's interests in the corporations.[4] Thus the court ruled that Bud had satisfied the divorce decree by his payment to Sylvia of the following amounts: zero for her interest in the Mud Creek Mining Corporation; $3,032 for her interest in All Arctic Fuel and Maintenance, Inc.; and $5,064.24 for her interest in Action Auto Parts & Salvage, Inc.

Given the broad latitude granted to trial courts in determining property divisions, we refuse to find that the superior court abused its discretion in granting Bud's motion to enforce, even though we might have taken a different approach. *Cf. Bussell v. Bussell*, 623 P.2d 1221 (Alaska 1981) (supreme court will not disturb trial court's decision on marital property division unless its decision is clearly unjust). The superior court's order granting Bud's motion to enforce is therefore AFFIRMED.

---

**4.** Simplistic reliance on only the "book value" method of valuing closely held corporations has been criticized by commentators and some courts. *E.g.*, L. Golden, *Equitable Distribution of Property* §§ 7.07–.09 (1983); *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73, 76–78 (1984); *Reid v. Reid*, 280 S.C. 367, 312 S.E.2d 724, 727 (S.C.App.

1984). *See also Hunt v. Hunt,* 698 P.2d 1168 (Alaska 1985); Internal Revenue Service Rev. Rul. 59–60, 1959–1 C.B. 237, § 4.01 (guidelines for valuing closely held corporations in cases of marital property distribution) (*quoted in Hunt,* 698 P.2d at 1171 n. 2).