**In re the MARRIAGE OF Sarah Susan PRICE, Petitioner,**

and

**Richard Alfred Price, Respondent.**

No. 84SC21.

Supreme Court of Colorado,
En Banc.

Nov. 3, 1986.
Rehearing Denied Dec. 8, 1986.

Susemihl, Lohman, Kent, Carlson & McDermott, Richard V. Lohman, Colorado Springs, for petitioner.

Kirkman, Henley & Pelican, Thomas C. Henley, Colorado Springs, for respondent.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *In re Marriage of Price*, 680 P.2d 1298 (Colo.App.1983). The court of appeals held that a temporary child support order automatically terminates upon the entry of a decree of dissolution of marriage, and that the trial court improperly valued certain marital property. We reverse and remand with directions.

## I.

In this prolonged dispute over custody, child support, maintenance, and property division there were many hearings extending over a period of more than three years. Sarah Price filed a petition for dissolution of her marriage to Richard Price on July 17, 1978. In her petition, Sarah requested custody of the Prices' two children, child support, maintenance and attorneys' fees. On August 18, 1978, the trial court granted temporary custody of the Prices' two children to Sarah, and ordered Richard to pay $1,000 per month as temporary child support for his two children. On March 2, 1979, the trial court reduced Richard's monthly child support obligation to $250 per child.

In the summer of 1979, the trial court transferred temporary custody of the children to Richard for purposes of further custody evaluation, and, on October 5, 1979, reduced Richard's monthly support obligations to $100 per child. The registry of actions contains a minute order stating that the reduction of Richard's support obligation was "to commence October, 1979 and to continue until the final hearing on custody and further order of [the] court at that time."

On December 7, 1979, while matters relating to child custody, support and property division were still pending, the court entered a decree of dissolution. The decree contained the following statement concerning child custody, child support, maintenance, and the division of marital property:

> See final orders in child custody, child support, maintenance and property division and division of liabilities. Those orders either have been entered as of the date of this decree or *will be entered in the future and subsequent to the date of this decree.*

(Emphasis added.)

In a number of hearings, both before and after the entry of the dissolution decree, the court stated that the issue of child support was being continued for good cause, and in most instances the parties agreed on a new date for a further hearing. On September 5, 1980, the court entered a permanent custody decree awarding joint custody of the children to Richard and Sarah. The decree provided that the children would spend six months of every year with each parent, and that Richard's temporary custody would terminate on January 15, 1981. The decree was silent as to child support payments. The children moved in with Sarah on January 15, 1981, and resided with her until July 15, 1981, at which time Richard took custody of the children.

Richard stopped making support payments after entry of the permanent custody decree. On October 2, 1980, Sarah filed a motion for issuance of a contempt citation, alleging that Richard had failed to make child support payments in accordance with the trial court's temporary order. The issue was not resolved until December 7, 1981, when the court issued a "Final Order" *nunc pro tunc* August 5, 1981 that addressed all pending matters, including permanent child support, support arrearages, and the division of marital property. The court ordered Richard to pay Sarah permanent child support in the amount of $250 per child per month in those months when Sarah had custody of the children. Support arrearages in the amount of $200 per month from October 1980 through December 1980, and $500 per month from January 1981 to July 1981 were also to be

paid by Richard.[1] As part of the property settlement, the court awarded a parcel of real estate to Sarah and valued the property at $16,000. The parties were in agreement in March, 1979 that the value of the property was $16,000.

Richard appealed the court's award of child support arrearages and the court's valuation of the real estate parcel. The court of appeals reversed, and held that the temporary child support order automatically terminated on the date the decree of dissolution of marriage was entered. The court of appeals also concluded that the trial court failed to value the real estate as of the date of dissolution, and that the March, 1979 agreement as to value was irrelevant to the court's determination. In our view, the trial court properly determined the arrearages in child support and did not abuse its discretion in its valuation of the real estate.

## II.

Section 14–10–108, 6 C.R.S. (1973), provides:

(1) In a proceeding for dissolution of marriage, legal separation, or child custody or a proceeding for disposition of property, maintenance, or support following dissolution of the marriage, either party may move for temporary payment of debts, use of property, maintenance, custody, support of a child of the marriage entitled to support, or payment of attorney fees.

. . . .

(5) A temporary order or temporary injunction:

(c) *Terminates when the final decree is entered,* unless continued by the court for good cause to a date certain, or when the petition for dissolution or legal separation is voluntarily dismissed.

(Emphasis added.)

The court of appeals concluded that the term "final decree" in section 14–10–108(5)(c) referred to the final decree of dissolution because orders other than final decrees of dissolution are not usually called decrees.[2] Accordingly, the court of appeals held that Richard's support obligations terminated under the temporary order on December 12, 1979, when the decree of dissolution was entered.[3]

We disagree. The Uniform Dissolution of Marriage Act contains many references to "decrees" that relate to matters other than dissolution of marriage. *See, e.g.,* section 14–10–106(1)(b), 6 C.R.S. (1973) (decrees concerning custody, support, maintenance, or disposition of property may be

---

1. In the trial court's view, Richard was obligated to pay temporary child support in the amount of $200 per month in those months when the children lived with him, and $500 per month in those months when the children resided with Sarah. Accordingly, the court assessed $600 in support arrearages for October through December, 1980, and $3,500 in support arrearages for January through July, 1981. The parties do not dispute the court's calculation of child support under the temporary orders.

2. The Uniform Dissolution of Marriage Act, of which section 14–10–108(5) is a part, contains no limiting or explanatory definition of the term "final decree." *See* section 14–10–103(1), 6 C.R.S. (1973), defining the term only as "includ[ing] the term judgment. . . ."

3. Richard also claims that the temporary order terminated on September 5, 1980, the date the permanent custody decree was entered. In support of his claim, Richard relies on the following excerpt from the court's October, 1979 order regarding temporary support: "But as far as the obligation to the ex-wife the Court will reduce the child support obligation to $100.00 per month per child starting in the month of October and to continue indefinitely until we get around to the question of permanent custody." Richard incorrectly interprets that statement in the court's order as inflexibly setting the "expiration date" of its temporary order as the date the permanent custody decree was entered. A more reasonable interpretation is that the court intended to continue the temporary order until its final determination on the issue of support, and that the court continued the temporary order until its final determination of custody because it assumed that permanent child support would be awarded at that time. The parties later reached an agreement with respect to custody, and the court immediately entered a permanent order based on the parties' stipulation. Other financial matters were disputed, and the court did not resolve those matters until it issued its final orders on December 7, 1981.

deferred until a time subsequent to the entry of a decree of dissolution); section 14–10–122(1)(a), 6 C.R.S. (1973 & 1986 Supp.) (support or maintenance decrees may be modified upon a showing that changed circumstances make the original terms unconscionable); section 14–10–131(2), 6 C.R.S. (1973 & 1986 Supp.) (custody decrees may be modified upon a showing that circumstances have changed and that the modification is in the best interests of the child); section 14–10–106(2), 6 C.R.S. (1973) (upon request, a court may grant a decree of separation unless objected to by the other party); section 14–10–111, 6 C.R.S. (1973) (in certain circumstances, a court may grant a decree declaring a marriage invalid).

■ The foregoing provisions evidence an intent on the part of the General Assembly not to limit the meaning of "decree" to a decree of dissolution. The General Assembly recognized that a decree of dissolution may address many issues, including dissolution of marriage, child custody, child support, maintenance, and the division of marital property. If the trial court elects in its discretion to dissolve the marriage but continue the determination of child support to a later date, the court's final order concerning child support is no less a "decree" for purposes of section 14–10–108(5) than if it were contained in the decree of dissolution.

■ An underlying purpose of the Uniform Dissolution of Marriage Act is to mitigate the potential harm to spouses and their children caused by the process of legal dissolution of marriage. *See* section 14–10–102(2)(b), 6 C.R.S. (1973). A temporary support order furthers that purpose by maintaining the status quo pending final disposition of the dissolution proceeding. *Jensen v. Jensen,* 670 S.W.2d 16, 18 (Mo. App.1984). *Cf. Bieler v. Bieler,* 130 Colo. 17, 19, 272 P.2d 636, 637 (1954) (the purpose of temporary alimony is to place the parties on an equal footing during dissolution proceedings); *MacReynolds v. MacReynolds,* 29 Colo.App. 267, 269, 482 P.2d 407, 408 (1971) (the purpose of temporary

alimony is to provide funds for a spouse who requires maintenance during the pendency of the action). To allow a parent to terminate his or her temporary support payments when the final decree of dissolution is entered, even though the decree is silent as to support, would upset the status quo, frustrate the purposes of the Act, and permit evasion of support on the irrelevant ground that a decree of dissolution was entered. In a variety of circumstances, we have declared that the parents' duty to support their children is unaffected by their relationship with one another, and that a parent must continue to support his or her children despite the other spouse's conduct. For example, the duty to support does not abate if the parents are separated, *see McQuade v. McQuade,* 144 Colo. 11, 13, 354 P.2d 597, 599 (1960), or if the parents are divorced and the decree is silent as to support. *Desch v. Desch,* 55 Colo. 79, 81, 132 P. 60, 61 (1913). A child's right of support is unaffected by the willful violation of a custody decree by the custodial parent, *see County of Clearwater v. Petrash,* 198 Colo. 231, 233 598 P.2d 138, 139 (1979), and a parent's failure to support his or her child may be considered by a court in determining whether the child is abandoned, even though support was not requested in the dissolution proceeding. *In re Martensen,* 129 Colo. 125, 128, 267 P.2d 658, 659 (1954). Finally, a parent is not automatically excused from making support payments because the custodial parent has converted funds already paid for that purpose. *Wright v. Wright,* 182 Colo. 425, 428–29, 514 P.2d 73, 75 (1973). These cases demonstrate that the duty of support is independent, and is not limited to the entry of a decree of dissolution. We decline to interpret the provisions of section 14–10–108(5)(c) in a manner inconsistent with that fundamental rule.

■ We therefore hold that where a court continues the determination of permanent child support to a time subsequent to the entry of a decree of dissolution, a temporary child support order is not termi-

nated on the date of dissolution by virtue of section 14–10–108(5)(c).[4]

## III.

### Valuation of Marital Property

Section 14–10–113, 6 C.R.S. (1973 & 1986 Supp.) provides:

(1) In a proceeding for dissolution of marriage ... the court shall set apart to each spouse his property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors....

....

(5) For purposes of this section only, *property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree.*

(Emphasis added.)

Richard claims, and the court of appeals agreed, that the trial court improperly valued the disputed property as of March 1979, because the court relied upon "agreed-upon levels which counsel have said existed in March of 1979...." A review of the record, however, discloses that the trial court was fully apprised of its duty to value the disputed lot as of the date

of dissolution, even though it based its valuation on an earlier agreement. The court noted during a hearing on Richard's motion for new trial or to alter or amend judgment that: *"we were required by the Colorado law which both parties agree is the law that the evaluation had to be as of the date of the decree,* even though we were dividing the property two years later." (Emphasis added.)[5]

■ Richard contends that even if the trial court correctly valued the disputed lot as of the date of dissolution, his subsequent testimony concerning the value of the lot was sufficient as a matter of law to overcome documentary evidence to the contrary. We disagree with his contention. Division of marital property is a matter resting within the sound discretion of the trial court, and when supported by competent evidence, will not be disturbed on appeal. *Carlson v. Carlson,* 178 Colo. 283, 288, 497 P.2d 1006, 1009 (1972). At the "Final Orders" hearing on December 7, 1981, the trial court had the following documentary evidence before it regarding the value of the contested parcel: (1) Richard's November 3, 1978 request for an admission that the current market value of the property was $16,000; (2) Sarah's July 27, 1978, December 7, 1978, February 2, 1979, May 28, 1981, and August 5, 1981 financial affi-

4. Although a temporary support order does not terminate automatically upon entry of a decree of dissolution, the better practice is to enter an order at the time the decree is rendered continuing the temporary support order to a date certain and setting forth good cause for the continuance. Failure to continue the temporary order to a date certain can result in extended litigation and confusion between the parties. For example, in *Silva v. Silva,* 122 R.I. 178, 404 A.2d 829 (1979), the defendant's former wife sought $25,500 in support arrearages under a temporary order entered twenty years earlier. Although the trial court had entered a decree *nisi* thirteen years earlier that dissolved the parties' marriage, the court retained jurisdiction over the parties "for the purpose of determining an award of [maintenance and support] on motion made by [the wife]." The defendant's former wife never moved for an award of permanent support, but claimed thirteen years later that the temporary support order had not terminated. The Rhode Island Supreme Court disagreed,

and held that the defendant's support obligations under the temporary order terminated upon entry of the decree *nisi.*

In the present case, the determination of permanent child support was continued beyond the date of dissolution of marriage, and the December 12, 1979 decree was not in the nature of a judgment *nisi.* Whether a temporary support order terminates upon entry of a decree that is determinative of all the parties' rights is an issue we do not consider today.

5. Other property awarded to Richard had increased significantly in value since the decree of dissolution, and, in the court's view, "balanced out" any appreciation in the value of the lot. Although post-dissolution increases in value are irrelevant to the division of marital property, the trial court properly valued the lot as of the date of dissolution, and the lapse of time between the "Final Orders'" hearing and the decree of dissolution does not require a new finding as to the value of the lot.

davits setting forth the market value of the parcel as approximately $16,000; (3) Sarah's February 2, 1979 answer to Richard's request for an admission admitting that the value of the lot was $16,000; (4) Richard's August 18, 1978 and January 29, 1979 financial affidavits setting forth the market value of the property as $16,000; (5) Sarah's February 2, 1979 proposed property settlement listing the market value of the property as $16,000; (6) Richard's February 9, 1979 proposed property settlement valuing the property at $16,000; and (7) Richard's August 5, 1981 proposed "Final Orders" setting forth the market value of the property as $16,000. On February 20, 1979, Richard's counsel first stated that the parties had reached an agreement as to the value of the property. On March 2, 1979, the court noted that the parties had agreed on a valuation of most of the marital property, including the real estate. At the "Final Orders" hearing, Richard's counsel objected to the presentation of new evidence on any items of marital property, excepting a diamond ring not here in issue. In the parties' July 30, 1981 stipulated statement of unresolved issues, the parties failed to list the lot as an item of undetermined value.

In opposition to his prior statements, Richard testified at the "Final Orders" hearing that:

> It is probably in error that [the value of the lot] was submitted at $16,000, because lots out in that exact same area are going for about $44,000 and that was two years [ago?]. They are going for $50,000 and $60,000 now. That is the current asking price is $55,000 to $60,000 out there, and so I think that whoever gets the lot is really going to get a windfall in terms of true value....

■ The trial court had sufficient evidence before it to conclude that the market value of the lot at the time of dissolution was $16,000. The parties' agreement as to the value of the lot, Sarah's response to Richard's request for admissions, and the verified financial statements and proposed final orders submitted by both parties were sufficient to support the court's valuation of the real estate. *See In re Marriage of Dickey*, 658 P.2d 276, 278 (Colo.App.1982) (verified statements in financial affidavits provide necessary support for trial court's valuation); *Reid v. Reid*, 280 S.C. 367, 312 S.E.2d 724, 728 (1984) (trial court erred in disregarding parties' stipulated valuation of marital property). The trial court did not abuse its discretion by disregarding Richard's ambiguous statement that the value of the property was three times the amount claimed in financial affidavits and proposed orders he submitted to the court.

■ We reject Richard's contention that the parties' March, 1979 agreement as to the value of the lot was outdated and irrelevant to the court's determination of the lot's value in December, 1979. *Gaskie v. Hugins*, 640 P.2d 248 (Colo.App.1981), upon which Richard relies, is inapposite. In *Gaskie*, the court of appeals held that stipulated values set *ten years* before the date of dissolution were neither binding nor relevant to the trial court's valuation of marital property. In the present case, the parties were in agreement as to the value of the lot nine months before the date of dissolution, and Richard restated the same valuation in documents filed with the court 18 months *after* the date of dissolution.

Accordingly, the decision of the court of appeals is reversed, and the case is remanded to the court of appeals with directions to reinstate the order of the trial court determining arrearages in child support and valuing the real estate parcel at $16,000.