THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jennifer Gray Williams, Respondent,
v.
Samuel Young Williams, Appellant.
 
 
 

Appeal From Georgetown County
 H. E. Bonnoitt, Jr., Family Court Judge

Unpublished Opinion No. 2005-UP-455
Heard June 17, 2005  Filed July 19, 2005

REVERSED AND REMANDED

 
 
 
Toni Lee Tack Pennington, of Pawleys Island, for Appellant.
Alice D. Potter, of Columbia, for Respondent.
 
 
 

PER CURIAM:  In this domestic action, Samuel Williams (Husband) appeals a divorce order valuing the couples interest in a family business and apportioning the marital property.  We reverse and remand.
FACTS
Jennifer Williams (Wife) and Husband were married in August 1995.  Wife had one child prior to the marriage, whom Husband adopted, and one child was born of the marriage.  Throughout the marriage, Wifes family substantially supported the couple.  The family gave the couple large monetary gifts, provided a $5,000 down payment on the couples condo, and deeded Wife two lots in a residential subdivision.  They also paid a large amount of Husbands tuition[1] and gifted him a car and a boat.  In addition to these gifts, the couple was granted an ownership interest in the Ospreys Nest, Inc. (the Business), Wifes familys business at Pawleys Island.  During Wifes mothers struggle with a serious illness and after her eventual death, Wife spent a considerable amount of time and effort running and maintaining the Business.  Husband attended school and worked at various jobs during the marriage.  At the time of the divorce, the couple owned 80 % of the Business, with 70% in Wifes name and 10% in Husbands.
The couple first separated in July 2001.  Wife filed an action for divorce, alleging Husband wasted large sums of their assets, presumably on illegal drugs, and physically abused her.[2]  In December 2001, the couple briefly attempted reconciliation and the initial divorce action was dismissed.  By April 2002, however, they were again separated.  Shortly thereafter Wife re-filed for divorce based on the prior physical abuse and Husbands continued wasteful spending of the couples assets.
Following a lengthy trial, Wife was granted a divorce on the ground of one years separation.  In its final order, the family court determined, inter alia, that the value of the Business was $90,269.66, making the couples interest in the entity worth $72,215.72.  The family court divided the marital property, including the Business, awarding 91% to Wife and 9% to Husband.  These two aspects of the family courts order, the valuation of the business and the apportionment of the overall marital property, were then appealed by Husband. 
STANDARD OF REVIEW
On appeal from the family court, this court has authority to determine facts in accordance with its own view of the preponderance of the evidence.  Murdock v. Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 244-45 (Ct. App. 1999).  This court, however, is not required to disregard the family courts findings, nor should we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony.  Badeaux v. Davis, 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct. App. 1999); Smith v. Smith, 327 S.C. 448, 453, 486 S.E.2d 516, 519 (Ct. App. 1997).
LAW / ANALYSIS
I. Valuation of the Business
Husband argues the trial court erred in basing the Businesss value on the stockholders equity value listed on the Businesss 2002 income tax assessment.  We agree.
In dividing marital property, the family court must identify both real and personal property and determine the fair market value of the identified property. 
Perry v. Estate of Perry, 323 S.C. 232, 237, 473 S.E.2d 860, 863 (Ct. App. 1996).  When a court is met with the task of valuing a business, each case must be decided on the facts and circumstances of that particular case; thus, the court is not restricted to any one method of valuation. 
Belk of Spartanburg, S.C., Inc. v. Thompson,
337 S.C. 109, 116, 522 S.E.2d 357, 360 (Ct. App. 1999).  However, no matter what valuation method is utilized, the court must still obtain what it considers to be the fair market value of the ongoing business. 
RGM v. DEM, 306 S.C. 145, 152, 410 S.E.2d 564, 568 (1991).  Fair market value is defined as what a willing buyer would pay a willing seller for a business.  Reid v. Reid, 280 S.C. 367, 373, 312 S.E.2d 724, 727 (Ct. App. 1984).  This value is determined by valuing the assets as part of a going business and not as liquidated assets.
Woodward v. Woodward, 294 S.C. 210, 214, 363 S.E.2d 413, 416 (Ct. App. 1987).  
In the present case, the family court utilized the stockholders equity value, as listed on the Businesss 2002 income tax assessment, for the purpose of equitable distribution.  Stockholders equity, also known as book value, includes the capital a business receives in exchange for stock and essentially amounts to a businesss total assets less its total liabilities.  As opposed to book value, market value contemplates the price a business would most likely sell for on the current market.  The market value of a business can be greater or less than the businesss book value or stockholders equity.  Accordingly, we reverse the family courts valuation of the Business and remand this issue for proper determination of the Businesss fair market value.
II. Equitable Distribution of the Marital Property
Husband argues the family courts apportionment of the marital property, granting 91% to Wife, was an abuse of discretion.  We agree.
Section 20-7-472 of the South Carolina Code (Supp. 2004) requires the family court to consider fifteen factors in apportioning marital property, including the duration of the marriage, any marital misconduct on the part of either party, the contributions of both parties to the marital property, and the income of both spouses.  In reviewing the family courts distribution of marital property, an appellate courts role is to examine the fairness of the apportionment as a whole.  Bragg v. Bragg, 347 S.C. 16, 24, 553 S.E.2d 251, 255 (Ct. App. 2001).  
The family court adequately addressed several of the statutory factors in determining an equitable distribution of the marital property, but it is clear that the foundation of the courts determination was the perceived marital misconduct on the part of Husband.  The bulk of the family courts analysis of equitable distribution relied on the following considerations:

The marriage ended because of [Husbands] misconduct.  [Husband] is an intelligent and well-educated man who has basically wasted his life to this point trying to get by through manipulation and guile.  He has never held a job for an extended period.  He has been convicted of both Driving Under the Influence and Distribution of Cocaine.  He has continued to use illegal drugs and wasted substantial marital assets during this marriage.  He has physically abused [Wife] and tried to alienate the parties children from their mother.  [Husband] is a good example of the me first generation whose prime motivation in all things is self-gratification.  After observing [Husband] at trial, and particularly during his testimony, the court finds him to be totally lacking in credibility. . . . The only wonder in this marriage is that it took [Wife] so long to get up the courage to leave him.

It is readily apparent that the family court was not impressed by Husbands behavior, nor did it find his testimony the least bit credible.  We initially note that this view of Husbands character and the credibility of his testimony is certainly supported by the evidence in the record.  Several allegations regarding Husbands drug use, frivolous spending habits, and abusive personality were asserted at trial, and Husband conclusively refuted none.  However, despite Husbands despicable behavior and what appears to be his complete lack of integrity, the law regarding the proper consideration of marital misconduct in determining an equitable distribution of marital property is well established.  While marital misconduct or fault remains a powerful consideration in apportioning marital property,[3] the purposes of equitable distribution are not punitive; thus, no degree of misconduct justifies a severe penalty.  See, e.g., Dixon v. Dixon, 334 S.C. 222, 235-36, 512 S.E.2d 539, 546 (Ct. App. 1999) (lowering a wifes award of 75% of the marital property, finding it unjustifiably punitive on the husband notwithstanding his fault in the dissolution of the marriage); see also Noll v. Noll, 297 S.C. 190, 196, 375 S.E.2d 338, 342 (Ct. App. 1988) (Fault is a factor for the court to consider in an equitable division award although it does not justify a severe penalty.).  While we concur with the family courts assessment of Husbands behavior and agree with the consideration of such in distributing the marital assets, we nevertheless find a division of 91% to Wife and 9% to Husband punitive in nature.  Because we remand the present case for determination of the Businesss fair market value, we also invite reconsideration of the overall apportionment of the marital estate taking into account all the enumerated factors of section 20-7-472.
For the foregoing reasons, the family courts order is
 REVERSED AND REMANDED.
ANDERSON, STILWELL, and WILLIAMS, JJ., concur.

[1] Husband earned a degree in golf course management from a local technical college.
[2] Husband was convicted of driving under the influence and distribution of cocaine prior to the marriage.  Wife was aware of the convictions prior to marrying Husband.  Also, an altercation ensued in July 2001 when Wife announced she was leaving Husband.  As a result, Husband was arrested for domestic violence.
[3] As long as the marital misconduct occurs prior to one of the three enumerated occurrences listed in Section 20-7-472(2) of the South Carolina Code (Supp. 2004), it is a valid consideration in equitable distribution even if it is not relied upon as a ground for divorce.  Accordingly, we give no credence to Husbands assertions that the couples brief reconciliation rendered consideration of his misconduct improper.