JONES v. THE PEOPLE.

1. JURORS.

If a juror announces in advance that he will not be governed by the instructions of the court, or if it appears doubtful whether such instructions will be controlling with him, as to the law of the case, the court should excuse him.

2. SAME.

Jurors may be examined, not only for the purpose of eliciting grounds of challenge for cause, but to ascertain their state of mind with reference to the matter in order that parties may be fully advised in exercising their right of peremptory challenges.

3. HYPOTHETICAL QUESTIONS—IMMATERIAL ERROR.

Although a question propounded to a medical expert, not hypothetically, but based on the evidence, and his answer thereto, if considered separate and apart from the remainder of his examination, would appear to be highly improper, yet when it appears from his

antecedent examination that the witness had expressed like opinions in answer to proper hypothetical questions, the error may be regarded immaterial, and, under the circumstances of this case, must be so considered.

4. CRIMINAL LAW—INSANITY—REASONABLE DOUBT.

If, upon the trial of a murder case, the jury entertain a reasonable doubt as to the sanity of the defendant at the time of the homicide, they should acquit.

5. SAME—INSTRUCTIONS.

Upon the trial of an indictment for murder, evidence of the insanity of a grandfather and of an aunt of the defendant is competent to show hereditary insanity in the family and proper for the jury to consider with the other evidence in the case as an aid in passing upon the mental condition of the defendant at the time of the homicide. When such evidence has been introduced, an instruction the effect of which is to deprive the defendant of its benefit is erroneous.

6. SAME—MURDER—MANSLAUGHTER.

The killing of an adulterer, deliberately and for revenge, is murder; but when a man finds another in the act of adultery with his wife, and kills him or her in the first transport of passion, he is guilty of manslaughter only.

*Error to the District Court of Arapahoe County.*

AT THE April, A. D. 1891, term of the district court of Arapahoe county, plaintiff in error was indicted for the murder of one Thomas J. Strawn. The case was first tried in 1892, but the result of that trial does not definitely appear from this record. It sufficeth to know that a new trial was awarded, and the defendant again put upon trial in June, 1893. The second trial resulted in a verdict of "guilty of murder in the second degree," upon which a sentence of imprisonment in the penitentiary for life was imposed. From this judgment a writ of error was sued out from this court. The remaining facts sufficiently appear in the opinion of the court. The writ of error was at one time dismissed for failure of prosecution, but it was recently reinstated upon stipulation, and the cause submitted upon printed briefs.

Mr. DAVID G. TAYLOR, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. CALVIN E. REED, of counsel, for the People.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The killing of the deceased is admitted by the defendant. It is claimed that it was done at a time when the defendant was insane, such insanity having been caused in part by a shock, produced by information reaching him going to show that his wife was unduly intimate with the deceased; that he was predisposed to insanity by heredity, and that the knowledge of his wife's infidelity, acting upon a mind weakened by this infirmity, transmitted from his father, dethroned his reason, and rendered him incapable of distinguishing between right and wrong. The first assignments of error relate to questions propounded to jurors, with reference to the effect upon them in the discharge of their duties as jurors in the case, if such intimacy should be established by the evidence. The nature of such examination will appear from the following, taken from the transcript:

" J. H. Lyon, being duly sworn to answer questions concerning his competency to sit as a juror upon the trial of the cause, testified as follows, among other things:

" DIRECT EXAMINATION BY MR. BENSON :

" Q. If it should appear that the wife of defendant and the deceased were unduly intimate, would that fact influence you in rendering your verdict, or could you disregard that fact, if such fact should be proven, and under the instructions of the court, render a fair and impartial verdict, notwithstanding that fact?

" The Court: I want to explain to the juror, before answering these questions, that under some circumstances the law does make a difference in cases of this kind. What the law is, and what the evidence will be, neither you nor I at at this time know, or are presumed to know, because we have not heard it; but we want to know, and all that we want to know now is, whether, after you have heard the evidence, you will be governed by the instructions of the court as to what the law is, in applying such evidence, or whether you will have a bias or prejudice, that will prevent you from prop-

erly weighing the evidence, and being governed by the law. You may answer this question with this explanation.

" A. It would not."

Thereupon, E. B. Green, another juror, being duly sworn to answer questions concerning his competency to sit as a juror in the trial of the cause, testified, *inter alia*, as follows:

" Q. If it should appear that the wife of the defendant in this case, and the deceased were unduly intimate, could you, and would you, notwithstanding that fact, return a verdict based wholly and solely upon the evidence, and the instructions of the court in this case? A. It would influence my mind.

" Q. Would it influence your mind to such an extent that you would disregard the instructions of the court? A. I would try very hard not to disregard the instructions of the court, but I doubt my ability.

" Q. You would doubt your ability if such fact were proven? A. Yes, sir.

" Q. Then, you doubt your ability, if such fact were proven, to act as a fair and impartial juror in the trial of this case? A. I do. I think that fact being proven, I doubt my ability.

" Q. And if such fact should be proven, you could not serve as a fair and impartial juror in the trial of this cause? A. I say I would do the best that I could, but I doubt very much if I could get that off my mind.

" Challenged by the prosecution for cause. Challenge sustained, and juror excused, to which ruling of the court defendant duly excepted."

There was no error in sustaining this challenge. In this state it is the duty of the court to declare the law in the trial of criminal, as well as civil, cases, and it is for the jury to determine the facts in accordance with the instructions of the court. The examination of jurors upon this evidence is for the purpose of obtaining a fair and impartial jury for the trial of the issues between the parties, and where a juror announces in advance that he will not be governed by the instructions of the court, or if it appears doubtful as to

whether such instructions will be controlling with him, as to the law of the case, it is the duty of the court to excuse such juror.

Similar questions were propounded to the juror Lyon, and others, who were not challenged for cause. Such questions were proper, not alone for the purpose of informing the parties to the end that they might intelligently exercise their right to challenge for cause, but for the stronger reason that counsel were entitled to be fully informed of the state of mind of the jurors with reference to the matter, in order that the parties should be fully advised in exercising the right of peremptory challenges.

A number of assignments of error are based upon the admission and rejection of evidence. The most important of these brings up for review the ruling of the trial court upon the redirect examination by the state of Dr. Eskridge, a medical expert, upon the question of sanity. The question objected to is as follows:

" Q. You have heard what Mr. Jones' acts were immediately before the shooting, and immediately after, and what he said immediately after? A. Yes, sir.

" Q. Did the defendant upon that occasion so far lose control of himself as to commit that act involuntarily, and without any power to control himself?

" Objected to by the defendant. * * * Objection overruled, and exception noted.

" A. I see no evidence of the loss of self-control there."

It is urged by counsel for the prisoner that it was necessary for Dr. Eskridge, in order to answer this question, to determine what the facts were. The answer to this objection is found in the examination of this witness immediately preceding this interrogatory. It appears from the transcript that the witness had been examined at length by the district attorney and by the defense. Such examination had proceeded strictly in accordance with well established rules, and the opinion of the witness was only sought upon questions hypothetically put. In the course of the examination, the district

attorney had detailed every circumstance that had transpired immediately before the shooting, and immediately thereafter, according to the theory of the state with reference to the evidence. When the witness was turned over to the defense, he was subjected to a thorough cross-examination, conducted with great skill and ability. In the course of this examination, hypothetical questions were propounded, in which every possible hypothesis of the case in favor of the defense upon the evidence was gone over. An examination of these questions as propounded by the district attorney and by the defense discloses a wonderful unanimity with regard to the facts occurring immediately before and immediately after the shooting. In so far as these matters are concerned, the facts may be said to be uncontroverted, and the question and answer objected to, when viewed in the light of the foregoing, must be held to have referred to the conceded facts, and although the question and answer, if considered separate and apart from the remainder of the examination of Dr. Eskridge, would appear to be highly improper, when viewed in connection with his antecedent examination it seems clear that no harm could have resulted. In substance, the witness had several times expressed a like opinion, in answering hypothetical questions, and the error in the question and answer objected to must, under the circumstances, be considered as immaterial. *McCarthy v. The Commonwealth*, 20 S. W. 229.

At the trial certain acts of the defendant at the time of the shooting were put in evidence for the purpose of showing that he was insane at the time of firing the fatal shot. So, also, it was in evidence that the defendant's father had been insane for a number of years, becoming so violent at one time as to require his incarceration in an insane asylum for a number of months. Evidence was also introduced for the purpose of showing that an aunt of the defendant was insane for a time. This evidence was competent to show hereditary insanity in the family, and therefore proper for the jury to consider with the other evidence in the case as an aid in passing upon the mental condition of the defendant at the time

of the homicide. Upon this evidence the court instructed the jury, against the objection of the defendant, that:

"Evidence of insanity of the defendant's father and aunt is to be considered and weighed by you only in case you should entertain a reasonable doubt as to the defendant's own sanity at the time he committed the offense of which he stands charged."

The court had previously correctly instructed the jury that the defendant was presumed to be of sound mind at the time of the homicide, unless the contrary appeared from the evidence; but if, upon the whole evidence, the jury entertained a reasonable doubt as to the sanity of the defendant at the time of the commission of the homicide, they should give the defendant the benefit of such doubt, and return a verdict of acquittal. 2 Bishop's Crim. Proc., sec. 673; *Hopps v. The People*, 31 Ill. 385; *People v. Wilson*, 49 Cal. 13; *State v. Bruce*, 48 Iowa, 530; *State v. Crawford*, 11 Kan. 32; *State v. Wilner*, 40 Wis. 304.

The correctness of the foregoing instruction as to reasonable doubt being conceded, the incorrectness of instruction No. 7 is manifest, for in it the jury are told that the insanity of the defendant's father and aunt is not to be taken into consideration, unless they entertain a reasonable doubt of the defendant's sanity. This was grievous error. It, in effect, deprived the defendant of the benefit of the testimony introduced with reference to the mental condition of his ancestors, for, in the absence of this evidence, he was entitled to an acquittal if the evidence left a reasonable doubt of his sanity, while by the instruction, the insanity of his father and aunt was only to be considered in case of such reasonable doubt appearing from other evidence;—in other words, under the instruction, this evidence could only be considered in case the defendant was entitled to an acquittal without it, in which event it would, of course, be unnecessary. The defendant was thereby deprived of the only possible benefit of such evidence. For this error the judgment must be reversed.

In view of a new trial, we will briefly refer to the law governing homicides of this nature.   The killing of an adulterer, deliberately and upon revenge, is murder; but where a man finds another in the act of adultery with his wife, and kills him or her in the first transport of passion, he is only guilty of manslaughter.   1 Wharton's Crim. Law, sec. 459; *Sawyer v. The State*, 35 Ind. 80; *State v. Holme*, 54 Mo. 153; *State v. France*, 76 Mo. 681.

With a single exception, these rules of law are supported by all the authorities.   Wharton's Crim. Law (10th ed.), sec. 459; Bishop's Crim. Law, sec. 708.

Contrary to the above, in *Biggs v. The State*, 29 Ga. 723, it was *held* that the defendant was excusable for shooting in the morning a man who, during the previous night, had attempted to commit adultery with his wife, but this was under peculiar circumstances, which the court seems to have deemed sufficient to show a renewal of the offense in the morning.   These circumstances were simply that the party in the morning took a seat near the defendant's wife at a breakfast table, at a public hotel.   The decision is not grounded upon any recognized principles of the law, and it has been repudiated by the best authorities.   1 Wharton's Crim. Law (10th ed.), sec. 496; 1 Bishop's Crim. Law, sec. 708.

*Reversed.*