# No. 13,305.

## JONES *v.* MILLIKEN, MANAGER OF SAFETY ET AL.

(42 P. [2d] 467)

Decided February 25, 1935.   Rehearing denied March 18, 1935.

Mr. Ira C. Rothgerber, Mr. Walter M. Appel, for plaintiff in error.

Mr. Walter E. Schwed, for defendants in error.

*In Department.*

Mr. Chief Justice Butler delivered the opinion of the court.

Carl S. Milliken, trustee of the Denver police department relief fund, sued Minerva Elizabeth Jones and Myra Stevens Jones, both of whom claimed to be the widow of James C. Jones, a former policeman, to determine which of them is the lawful widow and as such entitled to receive a pension. The trial court, sitting without a jury, held in favor of Myra and Minerva seeks a reversal of the judgment.

Jones and Myra were married in 1881. Two children, both girls, were born to them. In 1891, while Jones was a member of the Denver police department, he killed a man named Strawn, who, Jones claimed, was Myra's paramour. Jones was charged with murder. While out on bail he lived with Myra in Denver. He was convicted of murder of the second degree, but the sentence was reversed in 1896. *Jones v. People,* 23 Colo. 276, 47 Pac. 275. In 1897 Jones went to Wichita, Kansas, where he resumed marital relations with Myra who, with the children, had gone there to live. Those relations continued until 1901, when Jones came alone to Colorado. In May, 1902, he and Minerva went through a marriage ceremony. Thereafter for twenty-nine years and until his death, which occurred in 1931, they lived together as husband and wife. The law presumes innocence, not guilt; morality, not immorality; marriage, not concubinage. It follows that there is a presumption that a second marriage is valid and that all obstacles thereto, if any, had been removed. That presumption is not overcome by a pre-

sumption that a former marriage, once shown to exist, continues. The presumption in favor of a second marriage is not conclusive. However, one attacking such marriage has the burden of proving its invalidity.

In *Pittinger v. Pittinger,* 28 Colo. 308, 64 Pac. 195, we said: "In cases of this character, no inflexible rule can be laid down, which would be an infallible test by which to determine whether a marriage has been dissolved or not. Each one must be determined upon its own facts and circumstances, and such inferences as should fairly and reasonably be drawn from them."

When evidence is introduced tending to show the invalidity of a second marriage, the question of its invalidity is to be determined by the jury, or by the court when sitting without a jury, in the light of all the facts and circumstances in evidence and the reasonable inferences to be drawn therefrom.

The trial court held that the marriage of Jones with Minerva was void for two reasons; namely, (1) that the marriage of Jones with Myra never was dissolved, and (2) that, even if there had been a decree divorcing Jones and Myra, Minerva would not be the widow of Jones because she never married him. Both findings are attacked by counsel for Minerva.

1. Did the trial court err in holding that the marriage of Jones with Myra never was dissolved?

Assuming that, if the marriage of Jones with Myra was dissolved, the marriage of Jones with Minerva would be valid, there is a prima facie presumption that the former marriage was dissolved by a decree of divorce. To overcome that presumption and to meet the evidence introduced by Minerva tending to show that there was a divorce, Myra relies upon facts and circumstances in evidence tending to show that there was no divorce. If such evidence was sufficient to support the finding of the trial court that there was no divorce, we would not be justified in setting aside that finding on the ground that the evidence to the contrary was strong and might have seemed

to us persuasive if we, instead of the district court, had tried the case.

The following are some of the facts and circumstances in evidence that support the finding of the trial court: Jones resumed marital relations with Myra after her alleged misconduct, and continued to live with her and their children for four years. By doing so he either indicated a belief in her innocence or condoned her offense. In either event, he had no ground for divorcing her. In 1901 he left Myra and the children for no reason that reflected upon any of them. He told Myra that he was coming to Denver to get work. Thereafter, and continuing up to the time of his death, he corresponded with the children regularly, writing to one or the other every three or four weeks. He visited Myra and the children repeatedly, on one occasion staying several weeks at Myra's house. He attended the wedding of the daughter who married. He had a strong affection for both children. Myra testified that she never commenced or instituted any action for divorce from Jones; never received any divorce decree from him; never heard of a divorce between her and Jones; never was served with any papers in any action purporting to be an action for divorce brought by Jones; never received any document of any kind by mail or otherwise purporting to be a summons or process or complaint or any other document in any divorce action purporting to be instituted by Jones; and did not know that he was living with another woman. At no time did Jones refer in Myra's presence to a divorce or to a remarriage. He never mentioned a divorce to her, nor did she ever mention a divorce to him. It was agreed that counsel for Myra wrote to each county in Colorado asking if a divorce had been granted, and was informed that none had been granted. Bess, the older daughter, saw her father at various times after 1901. He never made any statement to her about any remarriage. When her father was sick in Florida, she visited him and met Minerva. Her father did not introduce Minerva. He

called her "Minnie." Minerva never told Bess that she was the wife of Jones. When Bess was about to leave, Minerva showed her a marriage certificate and said, "This doesn't mean anything." Bess remarked that it couldn't mean anything since her father was never divorced from her mother, and asked, "How long have you known it doesn't mean anything?" Minerva answered, "Since 1929," and thereupon she said to Bess: "Can't you do me a favor?- Won't you ask your mother to get a divorce so I can marry your father before he dies?" After the death of Jones, Minerva wrote to the children a letter which in part is as follows: "Dear Bess and Ethel: As soon as I'm able to leave my bed I will attend to sending you the deeds and abstracts to the property your Father left, and which he wanted you girls to have. His one aim in life was to acquire something for his girls (How he did love you) and felt his failure to do so most keenly. * * * Today I am an old woman, heart broken and alone. Yet I have the memory of thirty years of his true love and devotion, which I would not exchange for the wealth of the world. Our lives together may seem wrong to you girls. Still I feel certain if you understood everything you would not blame him. That he did not tell me how things were years ago, was hard for me at first but now I'm so thankful I did not let him know how it hurt, and I forgave him fully as he knew."

Minerva denied having had the above conversation with Bess. There was evidence of facts and circumstances tending strongly to support an inference that the marriage of Jones with Myra was dissolved by a divorce. It is not necessary to review such evidence and compare it with the evidence tending to support an inference to the contrary. It would serve no useful purpose to do so, because the question of the preponderance of the evidence was for the trial court to determine. Strong arguments are made by counsel for each side. It was not an easy matter for the trial court to determine whether or not there was a divorce; but considering all the facts and

circumstances in evidence, and drawing reasonable inferences therefrom, it reached the conclusion, and found, that the marriage between Jones and Myra never had been dissolved and that Myra is the lawful widow of Jones. In the circumstances, we would not be justified in setting aside that finding of the trial court.

2. As the marriage, if any, of Jones with Minerva is void for the foregoing reason, we need not discuss the additional reason assigned by the trial court for holding it to be invalid.

The judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE YOUNG concur.