No. 21087.

Mary Ellen Stoudt *v.*
The People of the State of Colorado.
(400 P.2d 670)

Decided April 5, 1965.

LEO W. RECTOR, JERRY ALAN DONLEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

By direct information Mary Ellen Stoudt was charged with the murder of Jerry Quinton Ives. To this charge she pled not guilty and not guilty by reason of insanity at the time of the alleged commission of the crime. Upon trial a jury of her peers determined that the defendant was sane at the time of the offense and then adjudged her guilty of murder in the second degree. Thereafter Stoudt was duly sentenced to a term of from fifteen to twenty-five years in the State Penitentiary.

By writ of error Stoudt now seeks a reversal of her conviction and sentence and as grounds therefor contends that the trial court erred in the following particulars:

1. in permitting the "late endorsement" of several witnesses by the district attorney and in thereafter overruling her request for a continuance;

2. in refusing to declare a mistrial because of improper voir dire questioning by the district attorney of certain prospective jurors;

3. in allowing the pathologist to express his opinion as to the distance from which the gun was fired at Ives;

4. in allowing the witness Kirkbride to testify as to the "connection" between certain bullet holes in cupboard located in the room where Ives was killed;

5. in refusing to require the witness Murphy to produce certain "notes" which "he had made relative to his investigation and had used to refresh his memory" prior to testifying; and

6. in permitting the People to call a psychiatrist as a

rebuttal witness and in thereafter refusing to allow the psychiatrist to testify as to a conversation he had with the defendant concerning an unsuccessful paternity suit which she previously brought against Ives.

In our view each of these alleged "errors" on the part of the trial court is without merit. In fact, our review of the record convinces us that this was a trial singularly free from error, even error of the technical or non-prejudicial variety. Let us then proceed to consider the several assignments of error urged by Stoudt.

 Some five days before the commencement of the trial, the trial court over objection permitted the district attorney to endorse nine persons as additional witnesses for the People. The defendant then moved for a continuance of the trial proper, and this request was denied. Of the nine persons thus endorsed, the People called only four in their case-in-chief; the defendant calling one as her own witness, and one thereafter being called as a rebuttal witness for the State. The remaining three persons were not called by either side. There is nothing in the record to indicate that any prejudice resulted from this interlocutory order of the trial court. There is no claim that the defendant was in anyway "surprised" by any of these witnesses or their testimony. The matter of a trial court permitting the district attorney to endorse witnesses on the date of trial, or very shortly prior thereto, is one which has been uniformly held to rest within the sound discretion of the trial court and its ruling in connection therewith will not be a basis for reversal unless there be a clear showing of an abuse of discretion. See *Baker v. People*, 72 Colo. 207, 210 Pac. 323; and *Gorum v. People*, 137 Colo. 1, 320 P.2d 340.

In the instant case Stoudt had some five days to interview these newly endorsed witnesses, if she felt any need therefor. This at once distinguishes the present controversy from *Kloberdanz v. People*, 95 Colo. 30, 31 P.2d 1111, where the late endorsement was permitted just as the trial proper was about to commence. Upon

trial of the instant case, when the district attorney pro-ceeded to call four of these nine persons as witnesses, there was no objection thereto and no indication that the defendant was in anywise "surprised" by their testimony. Under all these circumstances, it is quite clear that the order of the trial court granting the motion of the district attorney to endorse these persons as witnesses was proper and therefore such is insufficient to warrant or require a reversal of the judgment and sentence.

■ On voir dire examination of the jury panel the district attorney inquired of two jurors as to whether evidence of "indiscrimate sex relations" would in anywise influence the particular juror in his deliberation, and each such juror answered in the negative. When the same question was propounded to a third prospective juror, the defendant objected and demanded a mistrial. The trial court denied the motion for a mistrial, ordered the district attorney to stop propounding the question to other jurors because the question could be "misinterpreted," but declined to instruct the jurors that they should disregard the purport of the question. It is urged that this is error of such magnitude as to require reversal of the judgment and sentence.

In *Jones v. People*, 23 Colo. 276, 47 Pac. 275, prospective jurors were asked, over objection, if the fact that the wife of the defendant had been intimate with the deceased would in anywise influence their verdict. Upon review we held that this question was "proper." In the instant case there was no impropriety in asking this question as to whether evidence of indiscriminate sex relations would interfere in the juror's deliberations, particularly in view of the evidence which subsequently unfolded during the course of the trial proper. From the record we are unable to determine whether the "indiscriminate sex relations" referred to by the district attorney were actions by the defendant, the victim, or of certain of the witnesses who testified upon trial. In any

event, the trial court out of an abundance of caution ordered the district attorney to stop this line of questioning because of possible "misinterpretation." Under these circumstances the trial court did not thereafter "err" in refusing to declare a mistrial or in declining to draw further attention to the entire matter by instructing the jurors to disregard any inference, whatever it might be, which could be drawn from the question thus propounded.

■ Nor did the trial court err in permitting Dr. Urich, a pathologist who was also the coroner for El Paso County, to express his opinion that the lethal weapon was discharged some two to three feet from the person of Jerry Ives. This witness testified that as the coroner it was a part of his official duty to determine the "distance from which bullets have been fired at a body"; that as coroner he was called in on "all unattended or violent deaths" in El Paso County; and that based on "the appearance of the bullet wound, the powder marks around the wound and on the clothing, it is my opinion that the gun was held not further than thirty-six inches and probably in the neighborhood of twenty-four inches." In our view there was a sufficient showing to entitle this witness to testify in the manner indicated, the weight to be given his opinion still being a matter for the jury. See *Ausmus and Moon v. People,* 47 Colo. 167, 107 Pac. 204; and *Moss v. People,* 92 Colo. 88, 18 P.2d 316.

■ Stoudt's next contention is that it was error to allow the witness Kirkbride to testify that two holes in a cupboard, which cupboard was located in the room where Ives was killed, were "connected together." In connection therewith it is contended that it was also error to permit the introduction of certain photographs which the witness used in conjunction with his testimony that there was a connection between these two holes. These matters have been carefully examined and found to be wanting. As we read the record, Kirkbride's testimony in this regard was to the effect that these two

holes were "related" in the sense that one hole was where a bullet entered the cupboard and the other was where the same bullet emerged. If this be error, it certainly was of the harmless variety.

■ It is also urged that the trial court erred in denying Stoudt's request that certain notes, allegedly made by the witness Murphy, be produced for examination and use by counsel. When this matter is viewed in context, we are convinced that no prejudicial error occurred. In connection with this matter, we note that Rule 16(b) Colo. R. Crim. P., provides as follows:

"After a witness called by the State has testified on direct examination, the court shall on motion of the defendant order the prosecuting attorney to produce any statement of the witness in the possession of the prosecuting attorney or under his control which relates to the subject matter to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the witness' testimony, the court shall order it to be delivered directly to the defendant for his examination and use."

Upon cross-examination the witness Murphy was asked whether he had occasion to make a report "concerning all these activities." The witness answered by stating: "*we* made a follow-up report." (Emphasis supplied.) It should be pointed out that this witness was testifying from memory and had not been using a "follow-up report" or any other written memoranda while testifying. It was at this point that counsel stepped in and "demanded" the production of the report. The trial court denied the request but "invited" counsel to pursue the matter with additional questions designed to better "lay the foundation." Counsel declined to go along with this invitation of the trial court.

We hold that under all these circumstances there was no error. In the first place, the record does not affirmatively reveal whether this report was actually made by the witness himself. In response to questioning, Murphy

said that "we made a follow-up report." Whether Murphy or a fellow officer made the report remains unknown. Similarly, the record does not disclose whether the report was still in existence, and, if it was, in whose possession it was at the time of trial. As above noted, the witness did not "use" the report in connection with his testimony and just when he had previously read it also remains unknown. These unanswered questions could, of course, have been cleared up by counsel for the defense. Under these circumstances we hold that the trial court did not err in denying the request, particularly where the court indicated that this was not necessarily a "final" ruling and actually encouraged the defendant to pursue the matter further. Having refused this invitation, the defendant is now in poor position to urge it as error.

■ Finally, Stoudt assigns error to ruling of the trial court which permitted Dr. Conde, the psychiatrist, to be called as a rebuttal witness by the People. It is contended that this was improper rebuttal testimony in that it was a part of the People's case-in-chief. The contention is untenable. It should be kept in mind that the defendant pled not guilty and not guilty by reason of insanity. In the case-in-chief the People called no expert witness to express any opinion as to the defendant's sanity. Thereafter, the defendant in the presentation of her evidence called a Dr. Draper, who expressed his professional opinion that Stoudt was legally insane at the time of the alleged commission of the crime. Under these circumstances the testimony of Dr. Conde was clearly of a rebuttal nature in that it was designed to contradict and rebut the testimony of defendant's expert.

■ The fact that Dr. Conde, in violation of an order of court that witnesses be excluded therefrom, was present in the courtroom during much of the time when the defendant was testifying did not in and of itself *require* the court to refuse his testimony. A matter of this type is uniformly held to rest in the sound discretion of the

trial court. There is nothing in the record to indicate that Dr. Conde's presence in the courtroom was prompted by any malevolent intent or was the result of anything other than mere inadvertence. See *Cruz v. People*, 149 Colo. 187, 368 P.2d 774. Furthermore, in this situation it is customary to exempt a psychiatrist, whether he be a witness for the People or the defendant, from the exclusionary order. In any event, the trial court did not err in permitting Dr. Conde to testify.

▉ During the course of direct examination, Dr. Conde was asked to relate the personal history he received from the defendant. In his recital the doctor was about to say that Stoudt told him that she was assigned a lawyer from the local legal aid society to file a paternity suit for her against Ives. Objection was made by the defendant to this line of testimony, which objection was sustained. In connection therewith the defendant now complains in this Court that the doctor was improperly precluded from "disclosing to the jury, in full detail, the nature and the background of the conversation with the defendant concerning the paternity suit." It is elementary that a party may not prevail upon a trial court to exclude certain testimony and then urge in this Court that the exclusion of such is a ground for reversal.

▉ We have considered each of Stoudt's several assignments of error in some detail, not only because of the seriousness of the crime with which the defendant now stands convicted, but also because we are of the firm belief that such a consideration clearly demonstrates that there was no prejudicial error in the trial of this matter. C.R.S. '53, 39-7-17 declares that no judgment in a criminal proceeding shall be reversed unless there be error which tends to prejudice the substantial rights of the defendant on the merits. We are convinced that the record discloses no error which in anywise prejudiced Stoudt's substantial rights on the merits. Defendant was very ably represented by experienced counsel. There is evidence that the defendant went to Ives' home

in the wee small hours of the morning and shot him five times. The defendant admitted prior "indiscriminate sex relations" with Ives which she claimed resulted in the birth of a child. In this regard the defendant testified, however, that she bore Ives no malice as a result of this affair. Insofar as the killing itself was concerned, Stoudt testified that because of "blackout drinking" she recalled nothing about the incident. This was supposedly true even though about twelve hours after the homicide Stoudt voluntarily went to the sheriff's office, where she surrendered herself with the statement: "I killed Jerry Ives."

The judgment is affirmed.