2012 COA 128

In re the MARRIAGE OF Furrukh
JOEL, Appellee and Cross–
Appellant,

and

Aneela ROOHI, Appellant
and Cross–Appellee.

No. 10CA1881.

Colorado Court of Appeals,
Div. I.

Aug. 2, 2012.

Kimberley A. Cotter, Denver, Colorado, for Appellee and Cross–Appellant.

Lucero & Associates, R. Antonio Lucero, Denver, Colorado, for Appellant and Cross–Appellee.

Opinion by Judge J. JONES.

¶ 1 Aneela Roohi (wife) appeals the judgment declaring her marriage to Furrukh Joel (husband) invalid. She also appeals, and husband cross-appeals, the court's permanent orders regarding marital property and maintenance. We affirm the judgment of invalidity, affirm the permanent orders in part, reverse the permanent orders in part, vacate the permanent orders in part, and remand.

## I. Background

¶ 2 Husband, a United States citizen, and wife, a citizen of Pakistan, met and married in Pakistan on September 3, 2006. Husband returned to Colorado shortly after the marriage, and began the application process to allow wife to obtain permanent immigration status in the country. One year later, in September 2007, wife arrived in the United States. She received her conditional green card in February 2008.

¶ 3 In approximately May 2009, wife left Colorado without telling husband of her departure or where she was going. Husband eventually located her at her sister's house in New York, and thereafter filed a petition for dissolution of marriage. The dissolution proceeding was eventually dismissed, however, after the parties' reconciled for disputed reasons. In September 2009, wife returned to the marital home.

¶ 4 In February 2010, wife received final approval for her permanent green card. A few days after receiving notice of the approval, wife left the marital home and never returned. Husband then filed a second petition for dissolution of marriage, which he later converted to a petition for a declaration of invalidity of marriage.

¶ 5 Following an invalidity hearing, the court found that the evidence established that wife entered into the marriage to obtain legal residency in the United States and be closer to her sister, and not, as she had claimed, because she loved husband. The court declared the marriage invalid, and wife appealed.

¶ 6 This court issued an order requiring wife to show cause why the appeal should not be dismissed for a lack of a final order. Specifically, the show cause order noted that the court had never held a permanent orders hearing on property and maintenance as provided by subsection 14–10–111(6), C.R.S. 2011.

¶ 7 In light of wife's response, we stayed the appeal pending entry of permanent orders. Following a permanent orders hearing, the court (1) divided equally the marital increase in husband's 401(k) retirement account and the value of a Caravan automobile purchased during the marriage; (2) awarded certain jewelry to wife as her separate property; and (3) awarded wife maintenance of $150 per month for twelve months.

¶ 8 Wife thereafter renewed her appeal, and amended it to include the property division. Husband cross-appealed the property division and award of maintenance.

## II. Declaration of Invalidity

¶ 9 In her appeal, wife contends that the district court erred by declaring the marriage invalid. We are not persuaded.

¶ 10 Section 14–10–111 provides that a court may declare a marriage invalid for a number of reasons. As relevant here, subsection (1)(d) of section 14–10–111 provides that a district court shall enter a decree declaring a marriage invalid where "[o]ne party entered into the marriage in reliance upon a fraudulent act or representation of the other party, which fraudulent act or representation goes to the essence of the marriage."

¶ 11 Whether a marriage should be declared invalid for fraud is a fact-based inquiry for the court to resolve. See *Jones v. Milliken*, 96 Colo. 279, 281, 42 P.2d 467, 468 (1935) (a marriage is presumed valid, but if a question of invalidity arises, the court must determine invalidity in light of all the facts

and circumstances in evidence and the reasonable inferences to be drawn therefrom); *see also Feit v. Donahue,* 826 P.2d 407, 412 (Colo.App.1992) (whether there was a misrepresentation was a question of fact to be determined by the trier of fact); *Pittman v. Larson Distrib. Co.,* 724 P.2d 1379, 1386–87 (Colo.App.1986) (question whether employer fraudulently induced employee to change jobs was for the jury to resolve). Because the issue whether a marriage should be invalidated for fraud is one of fact, we will defer to the district court's finding unless the party challenging it demonstrates that it is clearly erroneous. *See Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979) (a trial court's factual findings "are not to be disturbed upon appeal unless clearly erroneous and not supported by the record"); *In re Marriage of Bregar,* 952 P.2d 783, 785 (Colo. App.1997); *see also In re Marriage of Hatton,* 160 P.3d 326, 335 (Colo.App.2007) (when there is record support for a court's factual findings, "its resolution of conflicting evidence is binding on review").[1]

¶ 12 Following the hearing on invalidity, the court found that: (1) husband was vulnerable, despondent, and lonely when he met wife because of the deaths of his first wife and their child; (2) wife knew that marrying husband would secure her legal entry into the United States; (3) wife pursued husband and convinced him to marry; (4) upon arriving in the United States, wife opened a separate bank account and kept her finances separate from those of husband, and she purchased her own cell phone and maintained a cell phone plan in her own name; (5) by her own admission, wife knew that her conditional green card would expire in February 2010; (6) wife returned from New York only to obtain her permanent green card; (7) wife "left [husband] for good" after receiving approval for her permanent green card; and (8) the parties never had sexual relations. The court also found that wife's testimony was not credible based on her demeanor at the hearing, other evidence introduced at the hearing, and her "greater motive to be untruthful as her legal residence in the United States could be placed in jeopardy if the marriage was found to be invalid."

¶ 13 Viewing the testimony in connection with its credibility assessment, the court found that wife entered into the marriage solely to obtain legal residency in the United States and not because she loved husband, as she had led him to believe. The court ultimately concluded that wife's fraudulent misrepresentations to husband in this regard went to the essence of the marriage and, accordingly, it declared the marriage invalid.

¶ 14 Wife's contentions essentially invite us to reweigh the evidence presented at the invalidity hearing. That is not our role. Because there is record support for the court's findings, we will not disturb the court's declaration of invalidity. *See Jones,* 96 Colo. at 281, 42 P.2d at 468; *In re Marriage of Blietz,* 538 P.2d at 116 (affirming declaration of invalidity where there was evidence husband married wife for material gain and not out of love for wife); *see also In re Marriage of Farr,* 228 P.3d at 269–70; *In re Marriage of Plesich,* 881 P.2d 379, 381 (Colo.App.1994) (appellate court must view the evidence in the light most favorable to the district court's order).

### III. Property Division and Maintenance

■ ¶ 15 Wife contends that the district court erred when it divided the marital property as of the date of the decree of invalidity and not as of the later permanent orders date. In his cross-appeal, husband contends that the court erred by awarding wife part of the increase in the value of his retirement account (to which he was the sole contributor), part of the value of a vehicle (which he claimed to have purchased with his own

1. We recognize that in *In re Marriage of Farr,* 228 P.3d 267, 269 (Colo.App.2010), the division said that "[w]e review for abuse of discretion the trial court's decision to invalidate a marriage." But the case the division cited for that proposition, *In re Marriage of Blietz,* 538 P.2d 114, 116 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)), did not contain any analysis of the applicable standard of review. Rather, the division in that case merely summed up its decision to affirm the trial court by saying that no abuse of discretion had been shown. We believe the clear error standard is applicable here, however, because it best comports with the factual nature of the determination made by the district court in this context.

funds), and maintenance. He argues that in doing so, the court effectively rewarded wife for her fraud, contrary to the principles of equity applicable in this context. We resolve husband's contention first, because if he is correct, wife's contention is largely moot.

## A. Applicable Law

¶ 16 In dividing the property at issue and awarding maintenance the court relied at the outset on subsection 14–10–111(6), which provides:

> The provisions of this article relating to the property rights of spouses, maintenance, and support of and the allocation of parental responsibilities with respect to the children on dissolution of marriage are applicable to decrees of invalidity of marriage.

¶ 17 Husband argues that this statute is not applicable to the facts of this case, because applying it here would allow wife to benefit unfairly from her fraud. Wife responds that the plain language of subsection (6) controls, and entitles her to retain the property and maintenance awarded by the court. We conclude that, even assuming that the statute applies to marriages invalidated because of fraud, the awards of property and maintenance to wife cannot stand.

■■■■■ ¶ 18 Statutory interpretation presents a question of law, which we review de novo. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010). To ascertain the legislative intent, we look first to the plain language of the statute, giving the language used therein its commonly accepted and understood meaning. *Id.* If, upon doing so, we determine that the language of the statute is clear and unambiguous, we must apply the statute as written. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). In that event, we do not resort to legislative history or further rules of statutory construction. *See Smith*, 230 P.3d at 1189; *Spahmer*, 113 P.3d at 162.

¶ 19 Also, we must read the relevant provisions of the Uniform Dissolution of Marriage Act (UDMA), sections 14–10–101 to –133, C.R.S.2011, together, harmonizing them if possible. *See In re Marriage of Dureno*, 854 P.2d 1352, 1355 (Colo.App.1992) (the UDMA must be read *in pari materia* and construed to effect the strong public policies underlying the act). And "[w]e will not construe statutes which are *in [p]ari materia* to lead to absurdities." *Colo. & S. Ry. Co. v. Dist. Court*, 177 Colo. 162, 166, 493 P.2d 657, 659 (1972); *see also Huddleston v. Bd. of Equalization*, 31 P.3d 155, 159 (Colo.2001) ("Statutes should not be read in isolation but together with all other statutes relating to the same subject or having the same general purpose, to the end that a statute's intent may be ascertained and absurd consequences avoided."); *In re Marriage of Dureno*, 854 P.2d at 1355 (when statutes on the same subject are potentially conflicting, the court must reconcile them, if possible, to avoid an inconsistent or absurd result).

¶ 20 The UDMA was enacted, in part, "[t]o mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage...." § 14–10–102(2)(b), C.R.S.2011; *accord* § 14–10–104.5, C.R.S.2011. It was not enacted to reward one perpetrating a void marriage. *Cf. People v. McGuire*, 751 P.2d 1011, 1012 (Colo.App. 1987) ("Section 14–2–111 [addressing the rights of one believing in good faith that he was married to another with whom he cohabitated] was enacted to protect innocent participants in meretricious relationships and the children of those relationships. It was not for the purpose of affording protection to the perpetrator of an invalid marriage."). Further, "[i]t is axiomatic that no one can profit by his own wrong." *W. Slavonic Ass'n v. Videtich*, 90 Colo. 230, 234, 8 P.2d 263, 264 (1932); *see Rossi v. Colo. Pulp & Paper Co.*, 88 Colo. 461, 500, 299 P. 19, 32 (1931) ("[F]raud taints everything it touches."). In light of the purpose of the statute, we do not perceive that the General Assembly intended that a party could benefit from his or her fraud through application of other provisions of the UDMA. *Argus Real Estate, Inc. v. E-470 Public Highway Auth.*, 109 P.3d 604, 611 (Colo.2005) (" '[S]tatutes may not be inter-

preted to abrogate the common law unless such abrogation was clearly the intent of the General Assembly.'" (quoting *Preston v. Dupont*, 35 P.3d 433, 440 (Colo.2001))).

¶ 21 Subsection 14–10–111(6) really says only that other provisions of the UDMA apply in invalidity cases. The other relevant provisions of the UDMA, properly applied, dictate that wife's fraud precludes an award of any property attributable to husband's contributions or an award of maintenance.[2]

¶ 22 Section 14–10–113, C.R.S.2011, governs the disposition of property between spouses. Subsection (1) thereof says: "[T]he court ... shall set apart to each spouse his or her property and shall divide the marital property, without regard to marital misconduct, in such proportions *as the court deems just* after considering all relevant factors...." (Emphasis added.) Accordingly, our appellate courts have noted on numerous occasions that dividing property pursuant to section 14–10–113 is an exercise of the court's equitable powers. *E.g., In re Marriage of Wells*, 850 P.2d 694, 697 (Colo.1993); *In re Marriage of Morehouse*, 121 P.3d 264, 267 (Colo.App.2005) ("a trial court must consider all relevant factors to achieve an equitable, but not necessarily equal, distribution").

¶ 23 In our view, the fraud of one party in inducing a marriage is dispositive. Property should not be divided in a manner that effectively treats the marriage as valid where doing so would reward the guilty party for his or her fraud. *See* § 14–10–111(5) ("Marriages declared invalid under this section shall be so declared as of the date of the marriage.").

¶ 24 Therefore, as to property acquired after the date of the voided marriage, or as to an increase in the value of property acquired before the voided marriage, *see* § 14–10–113(4), C.R.S.2011, the most the court may award to the party who engaged in fraud is the proportion of property or increase in value attributable to the financial contribution of that party. *See Jones v. Jones*, 313 Ky. 367, 231 S.W.2d 15, 16–17 (1950) (bigamous spouse was not entitled to any portion of property purchased during voided marriage where she did not contribute to purchasing it); *David v. Pillai*, 303 A.D.2d 708, 757 N.Y.S.2d 326, 327 (N.Y.App.Div, 2003) (bigamous spouse was entitled only to value of property in proportion to amount he contributed to purchasing it). In this way, the statutes pertaining to invalidity of marriage and property division are harmonized, a result consistent with the purpose of subsection 14–10–111(6) is achieved, and a result that rewards the perpetrator of a fraud is avoided.[3]

¶ 25 Awards of maintenance are governed by section 14–10–114, C.R.S.2011. Like section 14–10–113, section 14–10–114 requires an exercise of the court's equitable powers to reach a "just" result. *See* § 14–10–114(2)(b)(I)(B) (in awarding temporary maintenance, the court "shall deviate from the formula where its application would be inequitable or unjust"); § 14–10–114(4) (maintenance awarded as part of permanent orders "shall be in such amounts and for such periods of time as the court deems just"); *Carlson v. Carlson*, 178 Colo. 283, 288, 497 P.2d 1006, 1008 (1972). If a party committed fraud in inducing another to enter into a

**2.** The UDMA was adopted in 1971, and is based substantially on the Uniform Marriage and Divorce Act approved by the National Commissioners on Uniform State Laws in 1970. *In re Marriage of Wells*, 850 P.2d 694, 696 (Colo.1993). But subsections 14–10–111(5) and (6) differ from the analogous provision of the Uniform Marriage and Divorce Act, section 208(e). The latter presumes that a marriage will be declared invalid as of the date of the marriage, but, unlike subsection 14–10–111(5), allows a court to declare otherwise upon "consideration of all relevant circumstances." It further provides that provisions "relating to property rights of spouses, maintenance, support, and custody of children on dissolution of marriage" apply only to "non-

retroactive decrees of invalidity." As to retroactive decrees, the comments to section 208 suggest that property division be "accomplished by analogy to partnership law." Presumably, the General Assembly decided that provisions of the UDMA relating to property division, maintenance, and children should apply to retroactive declarations of invalidity to protect innocent spouses and children.

**3.** Because section 14–10–111(6) is intended to protect an innocent spouse, an equitable division of property may require that the innocent spouse receive more than a share of property strictly proportionate to that spouse's contribution.

marriage, an award of maintenance to that party would not be equitable or "just." *See Collins v. Collins*, 165 Ga. 198, 140 S.E. 501, 502–03 (1927) (bigamous spouse was not entitled to alimony); *Kienitz v. Sager*, 40 Haw. 1, 1953 WL 7541, *2–3 (1953) (voiding order requiring husband to pay temporary alimony to wife where husband subsequently discovered that wife was already married when she purported to marry husband).[4]

### B. Application

¶ 26 In light of wife's perpetration of fraud against husband, the resulting permanent orders requiring him to divide the marital increase in the value of his 401(k) account must be set aside. Because husband was the sole contributor to that account, the increase in value should be awarded entirely to him.

¶ 27 As for the value of the Caravan purchased during the marriage, the testimony as to who paid for it was conflicting. Husband testified that he paid for it from his own funds, but wife testified that husband bought the Caravan for her and that she reimbursed him. The court did not resolve this conflict. Therefore, we vacate the award of one-half of the value of the Caravan to wife and remand for further proceedings as to that asset. If the court finds that husband paid for the Caravan, the court shall award it to husband. If the court finds that it was paid for by wife, or that both parties paid for it, the court shall exercise its equitable power to divide the value of that asset, keeping in mind that wife may not receive a share of the value in excess of her proportionate contribution to purchasing the vehicle.

¶ 28 If the court determines that it is necessary to ascertain the value of the Cara-

van, the court should value it as of the date of the invalidity decree. Contrary to wife's contention, using that date is mandated by subsection 14–10–113(5). *See In re Marriage of Finer*, 920 P.2d 325, 331 (Colo.App. 1996). Though wife is correct that, when deciding how to equitably distribute property, the court must consider the parties' economic circumstances at the time property is to be distributed, the court remains obligated to value property as of the date of the decree. *See In re Marriage of Price*, 727 P.2d 1073, 1078 (Colo.1986); *In re Marriage of Nevarez*, 170 P.3d 808, 813 (Colo.App.2007).[5]

¶ 29 Wife is not entitled to an award of maintenance. As the perpetrator of a fraud, any such award to her would be inequitable and unjust.[6]

¶ 30 The judgment declaring the marriage invalid is affirmed. That portion of the permanent orders awarding the jewelry to wife is affirmed, those portions of the permanent orders dividing the increase in the value of husband's 401(k) account and awarding maintenance to wife are reversed, and that portion of the permanent orders dividing the value of the Caravan purchased during the marriage is vacated. The case is remanded for the purpose of determining the proper disposition of the Caravan.

Judge RUSSEL and Judge KAPELKE * concur.

---

4. Again, an award of maintenance to the innocent party may be appropriate.

5. Wife's contention that the decree of invalidity was not final until the court entered permanent orders is unavailing. Though not final for purposes of appeal, the decree was a final order as to the parties' marital status. *See* § 14–10–120(1), C.R.S.2011; *Estate of Burford v. Burford*, 935 P.2d 943, 953 (Colo.1997).

6. As to the jewelry, the court found that it had been given to wife and that it was therefore her separate property. Husband does not challenge that determination on appeal.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2011.