24CA0253 Parental Resp Conc KMS 11-07-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0253
Montrose County District Court No. 20DR30044
Honorable Mary E. Deganhart, Judge

In re the Parental Responsibilities Concerning K.M.S., M.D.S., and R.E.S.,
Children,

and Concerning Suzanne Nicolas and August Nicolas,

Appellants,

and

Jayne Mecque Sullivan and Daniel Francis Sullivan,

Appellees.

ORDER AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

Hogan Omidi, P.C., Hollie A. Hinton, Denver, Colorado, for Appellants

Grob & Eirich, LLC, Timothy J. Eirich, Lakewood, Colorado, for Appellees

¶ 1     Suzanne Nicolas and August Nicolas appeal the district court's order denying their C.R.C.P. 60(b)(3) motion for relief from judgment, which sought to vacate an order providing Jayne Mecque Sullivan and Daniel Francis Sullivan with grandparent visitation rights.  We affirm.

I.     Background

¶ 2     The Nicolases are the maternal grandparents, and adoptive parents, of K.M.S., M.D.S., and R.E.S.  The Sullivans are the biological, paternal grandparents of K.M.S. and M.D.S., and the legal, paternal grandparents of R.E.S., whom the Sullivans' son had adopted.  Both of the children's parents (the Nicolases' daughter and the Sullivans' son) died in April 2020.

¶ 3     During the resulting probate proceedings, the court appointed the Nicolases as the children's permanent guardians, and the court adopted a stipulated grandparent visitation plan allowing the Sullivans to regularly visit the children.

¶ 4     In October 2021, the Nicolases adopted the children, at which time all matters concerning the children were moved into a previously stayed domestic relations case that had been initiated by the Sullivans.  In closing the probate proceedings, the district court

1

indicated that the Sullivans anticipated filing a motion for expanded grandparent visitation in the domestic relations case, which they subsequently did. The Sullivans then filed that motion under section 19-1-117, C.R.S. 2021 (later amended and relocated to section 14-10-124.4, C.R.S. 2024). After applying the presumption that the Nicolases, as the children's legal parents, were acting in the children's best interests, the district court issued a grandparent visitation order, which denied expanded visitation and instead adopted a visitation schedule that the Nicolases had proposed with additional set holidays.

¶ 5 Almost two years later, the Nicolases filed a C.R.C.P. 60(b)(3) motion for relief from judgment, seeking to vacate that grandparent visitation order. The Nicolases asserted that the Sullivans lacked standing to seek grandparent visitation because, following the Nicolases' adoption of the children, the Sullivans no longer qualified as "grandparents" under the grandparent visitation statute. Accordingly, the Nicolases asserted that the district court lacked jurisdiction to issue the grandparent visitation order. The district court denied the Nicolases' motion.

## II.    Discussion

¶ 6    The Nicolases' sole contention on appeal is that the Sullivans lacked standing to seek grandparent visitation following the Nicolases' adoption of the children, and therefore, the district court erred in denying their C.R.C.P. 60(b)(3) motion.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 7    We review de novo a district court's determination that a party has standing.  *In re Parental Responsibilities Concerning E.S.*, 264 P.3d 623, 625 (Colo. App. 2011).  Standing generally refers to a particular litigant's right to raise legal arguments or claims.  *See HealthONE v. Rodriguez*, 50 P.3d 879, 891-92 (Colo. 2002).  When a party "brings a claim under a statute, the standing inquiry turns on whether the statutory provision 'can properly be understood as granting persons in the plaintiff's position a right to judicial relief.'" *Vickery v. Evelyn V. Trumble Living Trust*, 277 P.3d 864, 868 (Colo. App. 2011) (quoting *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 932 (Colo.App.2002)).  "Standing is a jurisdictional prerequisite that can be raised any time during the proceedings," *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7, and where the party petitioning the court lacks standing, the court accordingly

lacks jurisdiction over the dispute, *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004).

¶ 8 "[A] judgment rendered without jurisdiction is void," *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo. 1981), and C.R.C.P. 60(b)(3) allows litigants to seek relief from void judgments, *see McGuire v. Champion Fence & Const., Inc.*, 104 P.3d 327, 329 (Colo. App. 2004). A void judgment may be challenged at any time and must be vacated upon request. *Id.* We review de novo a proceeding under C.R.C.P. 60(b)(3) to set aside a judgment or order as void. *Id.*

B. Applicable Version of the Grandparent Visitation Statute

¶ 9 As a threshold issue, we agree with the parties that, in resolving the Nicolases' motion, the district court erroneously applied the current version of the grandparent visitation statute, section 14-10-124.4. In 2023, the legislature repealed section 19-1-117 and portions of section 19-1-103, C.R.S. 2021, and recodified them with amendments into section 14-10-124.4. *See* Ch. 243, secs. 2, 6, 8, § 14-10-124.4, 2023 Colo. Sess. Laws 1302-08. But because the Nicolases' motion challenged the Sullivans' standing to petition for grandparent visitation as of October 2021, sections 19-1-117 and 19-1-103, as they existed

4

then, governed instead of the later enacted section 14-10-124.4. However, we also agree with the parties that any error in applying that statute was harmless because the relevant language of the grandparent visitation statute remained substantially unchanged by the 2023 recodification and amendment. Regardless, we will apply sections 19-1-117 and 19-1-103, C.R.S. 2021, in reviewing the district court's order.

## C. Discussion

¶ 10   In interpreting the relevant statutory provisions, "[o]ur main task . . . is to ascertain and give effect to the intent of the General Assembly." *In re Marriage of Ikeler*, 161 P.3d 663, 666 (Colo. 2007). In completing this task, we read and consider the statute as a whole, giving "consistent, harmonious, and sensible effect to all its parts." *Id.* at 666-67. We start with the plain language of the statute, using its commonly accepted and understood meaning. *In re Marriage of Joel*, 2012 COA 128, ¶ 18. "If, upon doing so, we determine that the language of the statute is clear and unambiguous, we must apply the statute as written." *Id.*

¶ 11   As relevant here, section 19-1-117(1) permitted a grandparent to request visitation when there is or has been "a child custody case

5

or a case concerning the allocation of parental responsibilities relating to that child." The statute defined such a case as encompassing the following circumstances:

> (a) That the marriage of the child's parents has been declared invalid or has been dissolved by a court or that a court has entered a decree of legal separation with regard to such marriage;

> (b) That legal custody of or parental responsibilities with respect to the child have been given or allocated to a party other than the child's parent or that the child has been placed outside of and does not reside in the home of the child's parent, excluding any child who has been placed for adoption or whose adoption has been legally finalized; or

> (c) That the child's parent, who is the child of the grandparent, has died.

*Id.* Accordingly, the statute laid out three independent bases upon which grandparents may petition for visitation. *See People v. Pellegrin*, 2021 COA 118, ¶ 69 (recognizing that the use of the word "or" in a statute is presumed to be in the disjunctive sense, absent clear legislative intent to the contrary), *aff'd*, 2023 CO 37.

¶ 12    In turn, section 19-1-103(70)(a) defined "grandparent" for purposes of section 19-1-117 as "a person who is the parent of a child's father or mother, who is related to the child by blood, in

6

whole or by half, adoption, or marriage," although section 19-1-103(70)(b) excepted "the parent of a child's legal father or mother whose parental rights have been terminated in accordance with sections 19-5-101 and 19-1-104(1)(d)."

¶ 13    The Nicolases contend that the Sullivans could not petition for visitation under section 19-1-117 because, as of the filing of the petition, the Nicolases had adopted the children, making them the children's "father or mother" under section 19-1-103(70)(a). Therefore, according to the Nicolases, because the Sullivans were not the present "parent[s] of [the children's] father or mother," the Sullivans were not grandparents under section 19-1-103(70)(a) and lacked the standing to petition for grandparent visitation.

¶ 14    We reject the Nicolases' interpretation of "grandparent" in section 19-1-103(70)(a) for three reasons.

¶ 15    First, the Nicolases' reading of section 19-1-103(70)(a) is inconsistent with the overall statutory scheme of grandparent visitation because, under their reading of that section, the definition of "grandparent" itself would automatically cut off the right to grandparent visitation upon the adoption of the child by a third party. But we must read the statute as a whole, *see Ikeler*, 161

7

P.3d at 666-67, and section 19-1-117(1) specifically prevents grandparents from seeking visitation following the adoption of a child only if custody or parental responsibilities have been allocated to a non-parent. *See* § 19-1-117(1)(b).

¶ 16 The specific limitation on grandparent visitation created by section 19-1-117(1)(b) is known as the "adoption exclusion." *In re R.A.*, 66 P.3d 146, 149 (Colo. App. 2002). Where the biological parents' rights were "terminated in dependency and neglect, relinquishment, or similar proceedings," the adoption exclusion serves to "create[] an interim statutory right in favor of grandparents to visit grandchildren until placement of the child for adoption or entry of a final decree of adoption." *Id.*; *see also People in Interest of N.S.*, 821 P.2d 931, 932-33 (Colo. App. 1991) (The adoption exclusion "creates a statutory right in favor of grandparents to visit their grandchildren during the pendency of dependency and neglect proceedings, but that the visitation right terminates automatically upon placement of the child for adoption or entry of a final decree of adoption.").

¶ 17 However, the adoption exclusion is only found in the text of section 19-1-117(1)(b), providing for grandparent visitation where a

child has been placed with a non-parent, and not in sections 19-1-117(1)(a) or (c), which alternately provide for grandparent visitation in dissolution proceedings or where a child's parent, who was the child of the grandparent, has died. Accordingly, we agree with other divisions of this court that the adoption exclusion applies only to petitions based on section 19-1-117(1)(b). *See R.A.*, 66 P.3d at 149 (holding that "the adoption exclusion of § 19-1-117(1)(b) [wa]s not applicable . . . despite the adoption, because the biological parents' rights were not terminated in dependency and neglect, relinquishment, or similar proceedings; rather, their deaths provide[d] the sole basis both for [the] grandparents' request"); *In re Marriage of Aragon*, 764 P.2d 419, 420 (Colo. App. 1988) (holding that adoption of the grandchild by her stepfather following her mother's remarriage did not prevent the child's biological, paternal grandmother from seeking visitation because the adoption exclusion was limited to petitions filed under section 19-1-117(1)(b), and the grandmother had petitioned under section 19-1-117(1)(a)).

¶ 18    Here, while the Nicolases suggest that the Sullivans failed to specify which subpart of section 19-1-117(1) they were proceeding under, the district court found that, because the Sullivans' son was

9

deceased, their petition plainly fell within section 19-1-117(1)(c). We perceive no error in that determination, and accordingly, the adoption exclusion did not apply. *See R.A.*, 66 P.3d at 147-49.

¶ 19    Yet the Nicolases ask us, via the definitional operation of section 19-1-103(70), to nevertheless bar the Sullivans from seeking grandparent visitation under section 19-1-117(1)(c) because the Nicolases had adopted the children as of the date of the petition. But if, based on the definition of "grandparent" in section 19-1-103(70)(a), the grandparents of a child were already automatically disqualified from petitioning for visitation upon the child's adoption by a third party, then the adoption exclusion, as found solely in section 19-1-117(1)(b), would be largely superfluous. The Nicolases' proposed reading of section 19-1-103(70)(a) would thus require us to disregard the principles of statutory interpretation. *See Aragon*, 764 P.2d at 420 ("Where possible, a statute should be interpreted so as to give consistent, harmonious, and sensible effect to all of its parts . . . ."); *Colo. Real Est. Comm'n v. Bartlett*, 272 P.3d 1099, 1102 (Colo. App. 2011) (recognizing that courts should "avoid constructions that would render a part of the statute meaningless").

¶ 20    Therefore, we decline to read section 19-1-103(70)(a) as imposing what would effectively be a universal exclusion barring grandparents from seeking visitation after the adoption of a child by a third party.  Indeed, if the legislature had intended to bar grandparent visitation in all such instances, it could have done so. *See Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora,* 221 P.3d 399, 419 (Colo. 2009) ("When the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully.").  Instead, the legislature included an adoption exclusion in section 19-1-117(1)(b) only, and we may not otherwise rewrite the statute to impose a broader exclusion.  *See Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005) ("We will not create an addition to a statute that the plain language does not suggest or demand.").

¶ 21    Second, the Nicolases' interpretation of the grandparent visitation statute is undermined by the plain language of section 19-1-103(70)(a), *see Joel*, ¶ 18, which provided that a grandparent is "the parent" of the relevant child's "father or mother, who is related to the child by blood, . . . adoption, or marriage."

Importantly, the statute contained no language temporally restricting the definition of grandparent to the parents of the child's father or mother *as of the date of the petition.* And we decline to otherwise read such a restriction into the definition of grandparent when the plain text of the statute does not warrant it. *See Spahmer*, 113 P.3d at 162.

¶ 22   Therefore, under a plain reading of section 19-1-103(70), the Sullivans fall within the definition of grandparents, regardless of when they filed their petition for grandparent visitation. They are the biological parents of the children's father; they are related to K.M.S. and M.D.S. by blood, and R.E.S. by adoption; and their son's parental rights as to the children had not been terminated at the time of his death. *See* § 19-1-103(70)(a), (b).

¶ 23   Lastly, we disagree that allowing the Sullivans to petition for visitation impermissibly treats the children, as the Nicolases' adoptive children, in a manner different from natural-born children. While the adoption statute provides that an adopted child is "for all intents and purposes, the child of the petitioner" and "is entitled to all the rights and privileges and is subject to all the obligations of a child born to the petitioner," § 19-5-211(1), C.R.S. 2024, like

adoption, "a grandparent's right of visitation with his grandchild is statutorily derived," *Aragon*, 764 P.2d at 421. Accordingly, the grandparent visitation statute reflects "the General Assembly's intent . . . that, in certain circumstances, a grandparent's statutory right to grandchild visitation is not to be frustrated by the adoption statutes," and instead, "the legislative scheme evinces an intent to allow grandparent visitation in the case of . . . [the] death of a parent, even if a parent . . . objects," as has occurred here. *Id.*

¶ 24    In sum, because the Sullivans had standing to petition for grandparent visitation, the district court did err in denying the Nicolases' C.R.C.P. 60(b)(3) motion.

### III.   Disposition

¶ 25    The order is affirmed.

JUDGE HARRIS and JUDGE YUN concur.